801 P.2d 432

**In the Matter of a PARCEL OF REAL PROPERTY KNOWN AS 1632 N. SANTA RITA, TUCSON, Arizona.**

**No. 2 CA–CV 89–0202.**

Court of Appeals of Arizona,
Division 2, Department A.

March 13, 1990.

Reconsideration Denied April 19, 1990.

Review Denied Dec. 18, 1990.

198

Yvonne Ayers, Tucson, for claimant/appellant.

Robert K. Corbin, Atty. Gen. by David R. Ramage–White, Tucson, for plaintiff/appellee State.

## OPINION

HOWARD, Judge.

This is an appeal from a judgment forfeiting a lot and home located at 1632 North Santa Rita Avenue in Tucson used to facilitate racketeering offenses.

## FACTS

The evidence at trial showed that the Pima County Sheriff's Office received an anonymous tip through its 88–CRIME program [1] in which the caller stated that he

---

**1.** This program encourages persons with knowledge of criminal activities to telephone law enforcement officers and give anonymous information.

had observed a large quantity of marijuana being grown at appellant's residence. This tip was corroborated by aerial observation, and a search warrant was issued.

A deputy sheriff went to appellant's home on North Santa Rita at about 9:00 a.m., knocked on the screen door, and announced that he was a police officer and had a search warrant. He waited for approximately 45 seconds and, there being no response, he opened the screen door and knocked on the front door, again announcing his presence and purpose. After another 45–second wait, he looked through a window and saw a nude male coming out of a bedroom into the living room. The deputy again yelled that he was a police officer and had a warrant. When the male turned and started back into the bedroom, the deputy forced entry and secured the male.

A search of the premises revealed the existence of 341 growing marijuana plants in various sizes and four pounds of what appeared to be processed marijuana. The processed marijuana was found in a tin container and a deputy sheriff testified that he had seen marijuana packaged and sold in that fashion on prior occasions. The officers also found a set of scales of a type commonly found in narcotics cases and a two and one/half to three-foot high stack of seedling trays which are used to start marijuana plants from seed. The seedling trays were found inside the residence. Also found were three books on the cultivation of marijuana. A deputy sheriff testified that he had investigated narcotics cases for three to four years, had investigated over 200 narcotics cases and over 100 marijuana cultivation cases and, based on his experience and training, it was his opinion that 341 marijuana plants was not an amount grown for personal use.

Appellant was charged with unlawful possession of marijuana, unlawful possession of marijuana for sale, and unlawful production of marijuana. He entered into a plea agreement, pursuant to which he was convicted of unlawful possession of marijuana, a class 6 open-ended offense, and the remaining charges were dismissed.

He was placed on two years' probation and fined in the amount of $345.50.

After hearing the evidence the trial court ordered a forfeiture and declared a homestead exemption filed by the claimant to be null and void.

Prior to the bench trial, the state had entered into a stipulation with another claimant, the mortgage holder on the property, the effect of which was to protect that claimant's interest in the property without that claimant having to participate in the litigation.

## APPELLANT'S CONTENTIONS

Appellant contends: (1) the civil penalty of forfeiture of appellant's home is so divorced from the state's damages or costs expended that it constitutes a prohibited double punishment; (2) the trial court erred by ordering a forfeiture where the state failed to plead or prove any racketeering injury, damages or cost; (3) the property was not subject to forfeiture because an act of racketeering was never proven; (4) only that portion of the real estate actually utilized for cultivation should have been ordered forfeited; (5) appellant had established a valid homestead exemption that precluded forfeiture; (6) the evidence relied upon was seized in violation of appellant's fourth amendment rights and cannot be a basis of a complaint for forfeiture; and (7) the trial court erred in ordering appellant to pay the sum of $2,000 to the bank which held the mortgage on the property. We do not agree with any of these contentions and affirm.

## DISCUSSION

### I.

Since the appellant had previously pled guilty to criminal charges which were filed as a result of the execution of the search warrant, he contends that in view of the value of his equity in the home, $28,407.65, and the state's failure to put on any evidence to show how much the state expended for his apprehension and prosecution, the forfeiture constituted an impermissible double punishment in violation of his rights

under the fifth amendment to the United States Constitution.

For this proposition appellant relies on the case of *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). The facts of *Halper* are as follows. Halper worked as a manager of the New City Medical Laboratories which provided medical services in New York City for patients eligible for benefits under the federal Medicare program. Halper submitted to Blue Cross and Blue Shield 65 separate false claims for reimbursement for services rendered. Specifically, Halper charged $12 per claim for a service which should have been billed at $3 per claim. Duped by these misrepresentations, Blue Cross overpaid New City Medical Laboratories a total of $585. Blue Cross then passed these overcharges along to the federal government.

When the government became aware of Halper's actions, it indicted him under 18 U.S.C. § 287 on 65 counts of violating the criminal false claims statute. Halper was convicted on all 65 counts, was sentenced to two years' imprisonment, and fined $5,000. The government then brought a civil action against Halper under the civil False Claims Act, 31 U.S.C. §§ 3729–3731, which resulted in a summary judgment for the government on the issue of liability. The government sought the statutory penalty of $2,000 per claim, for a total penalty of more than $130,000. The district court concluded that in the light of Halper's previous criminal punishment, an additional penalty in this amount would violate the double jeopardy clause. The government appealed and the United States Supreme Court agreed that the disparity between the district court's approximation of the government's costs and Halper's $130,000 liability was sufficiently disproportionate that the sanction constituted a second punishment in violation of double jeopardy but remanded the case to permit the government to demonstrate that the district court's assessment of the government's injuries was erroneous. In coming to its conclusion, the Court held:

> We therefore hold that under the Double Jeopardy Clause a defendant who al-ready has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

490 U.S. at 448–449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

The Court in *Halper* recognized that in those cases where the purpose of the civil sanction is to compensate the government for its damages and costs, it may be difficult to prove if not impossible to ascertain, such damages at the point beyond which the sanction takes on the quality of punishment. In such cases, the court recognized that the process of affixing a sanction to compensate the government invariably would involve an element of "rough justice." *Id.* However, as far as *Halper* was concerned, the Court announced a rule for what it called the "rare case":

> Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.

*Id.*

Thus, it is only in the *Halper*-type fact situation that the government must give an accounting of its damages and costs. Such is not the case here and our inquiry narrows to the question of whether the forfeiture cannot be fairly characterized as remedial, but only as a deterrent or retribution.

Compensating the government for its costs and damages is not the only remedial purpose that can be encompassed in a statute. For example, in *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984), forfeiture of firearms under the Gun Control Act of 1968 was held to be remedial because it sought to control the indiscrimi-

nate flow of firearms by removing from circulation firearms that have been used or intended to be used outside the regulated channels of commerce. As the Court stated: "Keeping potentially dangerous weapons out of the hands of unlicensed dealers is a goal plainly more remedial than punitive." 465 U.S. at 364, 104 S.Ct. at 1106, 79 L.Ed.2d at 369–70.

■ Therefore, we must turn our attention to the Arizona statutes to determine whether or not they are only a deterrent or retribution or can be fairly characterized as remedial.

Possessing marijuana for sale is "racketeering" under A.R.S. § 13–2301(D)(4). The state may file an action to remedy racketeering. A.R.S. § 13–2314. In addition to an action for racketeering, the state may file a forfeiture action against "all ... property ... used or intended to be used in any manner or part to facilitate the commission of the offense." A.R.S. § 13–2314(F)(3). A.R.S. § 13–2314(N) specifically states that a forfeiture proceeding is remedial and not punitive. A.R.S. § 13–2314(F)(3) in its entirety is as follows:

> F. In addition to or in lieu of an action under this section the state may file an action pursuant to chapter 39 of this title for forfeiture, to the extent not already ordered paid pursuant to this section, of:
>
> *     *     *     *     *     *
>
> 3. All proceeds traceable to an offense included in the definition of racketeering in § 13–2301, subsection D, paragraph 4 and all monies, negotiable instruments, securities, property and other things of value used or intended to be used in any manner or part to facilitate the commission of the offense.

We believe A.R.S. § 13–2314(F)(3) serves two purposes. It deprives the defendant of the means to commit further offenses, and it also helps the state defray the expenses of the investigation and prosecution. Based on the first purpose alone, the statute can be fairly characterized as remedial.

## II.

Appellant claims that the complaint should have been dismissed for failure to state a claim because it did not allege any injury arising out of the predicate offense and there was no proof at trial of any injury. We do not agree. The case of *State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 667 P.2d 1304 (1983), upon which appellant relies is not on point. It deals with a suit for *damages* under Arizona's RICO statutes and not a forfeiture.

## III.

■ Appellant contends that the state failed to show that he possessed the marijuana for sale, a necessary element of racketeering under A.R.S. § 23–2301(D)(4), and that, in any event, the state cannot obtain forfeiture of the real estate because there was no evidence that it was maintained or acquired from the proceeds of racketeering. See A.R.S. § 13–2314(D)(6)(a) and (c). We do not agree.

The testimony of Officer Gray, who executed the search warrant, established that the marijuana was being grown and possessed for sale. He testified that there were 341 growing marijuana plants on the property, that such an amount was not consistent with personal use but was consistent with sale, that the average number of plants cultivated for personal use was three to five, that a set a scales of the type used in narcotics transactions was found in the residence in a briefcase, and that it was common to expect a yield of approximately one to one and one-half pounds of marijuana per plant. In addition, approximately four pounds of processed marijuana were found in the residence packaged in a manner used to sell marijuana. Appellant presented no evidence of any kind to contradict this testimony.

■ As for appellant's second contention, the state did not have to show that the real estate had been acquired or maintained with the use of proceeds from racketeering. All it had to show was that the real estate was used or intended to be used to facilitate the offense. This was done.

## IV.

■ Because the marijuana growing in this case occupied a plot only 20 feet by 30 feet, appellant contends the forfeiture of the entire real estate constituted a cruel and unusual punishment under the eighth amendment to the United States Constitution. Assuming arguendo, that the eighth amendment applies in a civil forfeiture in rem proceeding, we do not agree with appellant's contention. The federal courts have rejected similar claims. In *United States v. Reynolds*, 856 F.2d 675 (4th Cir. 1988), the claimant had used only one relatively small part of a 30–acre tract to facilitate the distribution of cocaine. The claimant had appealed the forfeiture of the entire 30 acres, contending that because only a small part of that property was used to facilitate distribution of cocaine, forfeiture of the entire 30 acres was error. The Fourth Circuit rejected that argument because the wording of the forfeiture statute indicated that the entire parcel of land used to facilitate the crime was subject to forfeiture. Accord *United States v. A Parcel of Land With a Building Located Thereon*, 884 F.2d 41 (1st Cir.1989); *United States v. Santoro*, 866 F.2d 1538 (4th Cir.1989); *United States v. Premises Known as 3639 2nd St.*, 869 F.2d 1093 (8th Cir.1989). See also *United States v. Tax Lot 1500*, 861 F.2d 232 (9th Cir.1988), cert. denied by *Jaffee v. United States*, —— U.S. ——, 110 S.Ct. 364, 107 L.Ed.2d 351 (1988), where the claimant grew 143 marijuana plants on a deck over his garage and in a two and one-half foot by five-foot garden. The court held there is no eighth amendment proportionality review applicable to civil in rem forfeitures and ordered forfeiture of the entire tract. The reasoning behind the cases cited is that the federal forfeiture statutes indicate that the entire parcel of land used to facilitate the crime is subject to forfeiture. Like the federal statute, A.R.S. § 13–2314(F) states that *all* property used to facilitate the commission of the offense is subject to forfeiture.

## V.

■ Appellant argues that because he filed a homestead exemption after the forfeiture proceedings commenced, the property was not subject to forfeiture. A.R.S. § 33–1103 provides that the homestead is exempt from process and from sale under a judgment or a lien existing prior to the recording of the claim. Appellant contends that it would be against public policy to allow the state to forfeit his homestead. We do not agree. In fact, we believe that it would be against public policy to hold that the homestead prevails over the forfeiture provisions. Furthermore, the legislature has spoken on this issue by virtue of its failure to list a homestead as property that is exempt from forfeiture pursuant to A.R.S. § 13–4304.

A.R.S. § 33–1101(A) provides:

> Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from *attachment, execution and forced sale*, not exceeding one hundred thousand dollars in value, any one of the following: ....

(Emphasis added.) The purpose of the homestead statutes is to save exempt to the family the amount of money designated as the value of a homestead by protecting the family from a forced sale to satisfy the debts of the owner. The forfeiture here is not predicated upon the debts incurred by the owner but rather is based on the illegal uses to which the property was put. The homestead statutes were not designed to immunize real property for use in a criminal enterprise. See *DeRuyter v. State*, 521 So.2d 135 (Fla.Dist.Ct.App.1988).

## VI.

■ Appellant contends that the marijuana and scales were seized as a result of a violation of the fourth amendment to the United States Constitution and that the evidence should not have been relied upon by the trial court in order to form the basis for an order of forfeiture. This claim is without merit for at least two reasons. First, A.R.S. § 13–2314(G) states:

> A defendant convicted in any criminal proceeding shall be precluded from subsequently denying the essential allega-

tions of the criminal offense of which he was convicted in any civil proceeding. For the purposes of this subsection, a conviction may result from a verdict or plea including a no contest plea.

A.R.S. § 13–4310(C), which governs judicial forfeiture proceedings, contains the same language. Appellant's challenge to the admissibility of the evidence is his denial of the fact that he was in possession of marijuana which cannot be asserted because of the foregoing statutes and his prior conviction of possession. In any event, there was no evidence of an illegal search.

### VII.

Appellant's last contention is that the trial court erred by ordering him to pay $2,000 to Binghampton Savings Bank, the mortgage holder. Appellant argues that the state needlessly incurred this fee by failing to immediately and informally acknowledge the validity of Binghampton Savings Bank's claim and prior lien and offering to prepare a stipulation regarding the bank's exemption for forfeiture that would comply with the requirements of the statute. Appellant points out that the state did eventually agree to sign such a stipulation, but in the meantime, the bank was forced to hire a lawyer to defend its lien, file a claim, and have counsel travel to Tucson and appear at court hearings regarding the matter. We do not agree with this contention. A.R.S. § 13–4314(F) states:

> The court shall order any claimant who fails to establish that his entire interest is exempt from forfeiture under § 13–4304 to pay the costs of any claimant who establishes that his entire interest is exempt from forfeiture under § 13–4304....

The state has no obligation to minimize the attorney's fees allowable under the foregoing statute, and there is nothing wrong with the state's requiring the bank or any other such claimant to follow the statutory procedures.

Appellant additionally urges that A.R.S. § 13–4314(F) be declared unconstitutional as an unjust taking in violation of the fifth amendment under circumstances such as these because the state could have completely eliminated the bank's need to expend sums for attorney's fees. We do not agree for the reasons previously stated.

Affirmed.

ROLL, P.J., and HATHAWAY, J., concur.