## A91A2144. CARRUTH v. BROWN.
### (415 SE2d 470)

BEASLEY, Judge.

Having been denied a new trial, plaintiff Carruth appeals the judgment on the jury verdict in favor of defendant Brown in this suit for personal injuries stemming from Brown's alleged negligence in a collision with the rear of a vehicle in which Carruth was a passenger. The sole issue is whether or not the trial court erred in allowing defense counsel to elicit evidence of Carruth's prior guilty pleas to misdemeanor criminal issuance of bad checks. OCGA § 16-9-20 (b) (1).

On the day of trial, Carruth filed a written motion in limine asking that defendant not be permitted to comment on or offer evidence of any of Carruth's prior traffic convictions, that Carruth was not

wearing a seatbelt at the time of the collision, and the reduction of damages based on collateral source. The motion made no mention of the bad check convictions. The question of these convictions was first raised during the hearing on the motion just prior to the start of trial; Carruth's counsel asked the court to instruct defense counsel not to make reference to the convictions during voir dire. The court reserved ruling after defense counsel stated that it would not be raised during voir dire. Following jury selection, Carruth's counsel moved that a motion in limine be granted as to both the bad check and traffic convictions coming into evidence in the course of trial. The court denied the motion regarding the bad checks.

The bad check evidence was introduced on cross-examination of Carruth. Defense counsel commented that Carruth's attorney had asked Carruth about Carruth being nervous in the courtroom and then counsel asked, "This is not your first time in a courtroom, is it?" Carruth replied that it was not and agreed that he had been in a courtroom several times, some of them relating to his having written a series of bad checks. Carruth affirmed that he had pled guilty to the charges and received certain fines. There was no further cross-examination regarding the convictions. On redirect, Carruth elaborated about the circumstances of writing the bad checks (marital difficulties causing bank account shortages) and about the misdemeanor nature of the charges.

Appellant contends, relying on *Mingo v. State*, 195 Ga. App. 438 (394 SE2d 104) (1990), that a misdemeanor bad check conviction is not a crime involving moral turpitude and thus, evidence of it could not be admitted for impeachment purposes. He urges that the evidence improperly placed his character in issue and that its prejudicial impact outweighed its probative value.

Appellant also asserts that the fact of the convictions should have been shown by "recorded evidence," i.e., certified copies, but that question is not reached because appellant failed to raise it below. "Issues never raised at trial will not be considered for the first time on appeal. [Cit.]" *Hammond v. Paul*, 249 Ga. 241, 242 (1) (290 SE2d 54) (1982).

"In Georgia, a witness in a civil case may always be impeached by proof of a conviction for a felony or other crime involving moral turpitude. [Cit.]" *Giles v. Jones*, 169 Ga. App. 882 (315 SE2d 440) (1984). See also *Tilley v. Page*, 181 Ga. App. 98, 100 (4) (351 SE2d 464) (1986); *State v. Byrd*, 255 Ga. 665, 666 (341 SE2d 455) (1986). Despite a trend to liberalize allowance of such evidence, see *Tilley*, supra at 100 (4), there is no authorization for impeachment by conviction of a misdemeanor not involving moral turpitude. The threshold question, then, is whether or not as a matter of law misdemeanor issuance of bad checks is a crime of moral turpitude.

*Mingo*, cited by appellant, does not address the question. In that case, the contention was that the trial court erred in refusing to admit for impeachment purposes, certified copies of the victim's guilty pleas to charges of issuing bad checks. Mingo proposed to introduce such evidence by recalling the victim after the State rested. The trial court ruled the evidence improper for impeachment purposes and that the offenses did not involve moral turpitude. This Court did not reach this question, ruling instead that, having made no attempt to raise the issue on cross-examination of the witness, Mingo sought to recall the witness as his own for purposes of impeachment, which was not permissible absent a showing of entrapment. It was held not to have been abuse of the trial court's discretion to refuse permission to recall the State's witness and introduce evidence impeaching her.

*Huff v. Anderson*, 212 Ga. 32, 34 (2) (90 SE2d 329) (1955), applied the definition of moral turpitude found in *Holloway v. Holloway*, 126 Ga. 459, 460 (55 SE 191) (1906): " 'Turpitude in its ordinary sense involves the idea of inherent baseness or vileness, shameful wickedness, depravity. [Cit.] In its legal sense it includes everything done contrary to justice, honesty, modesty, or good morals. [Cits.] The word "moral," which so often precedes the word turpitude, does not seem to add anything to the meaning of the term, other than that emphasis which often results from a tautological expression. All crimes embraced within the Roman's conception of the crimen falsi involve turpitude; but it is not safe to declare that such crimes only involve turpitude.' ' "Moral turpitude" is an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow man, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' [Cit.]" *Huff* at 34 (2). Based on such definition, it was concluded that the offenses of obtaining money from another by fraud or false pretenses or larceny after trust were "crimes *malum in se*, involving moral turpitude."

*Lewis v. State*, 148 Ga. App. 16, 17 (1) (251 SE2d 18) (1978), also applied the legal definition of moral turpitude found in *Huff* and cited federal case law and rules of evidence, reaching the conclusion that " 'a crime involving dishonesty . . . is considered to be one involving moral turpitude.' " In affirming *Lewis* on certiorari, the Supreme Court discussed the definition and scope of moral turpitude and determined that, disregarding punishment, the relevant inquiry regarding classification is whether or not the offense is "contrary to justice, honesty, modesty, good morals or man's duty to man." *Lewis v. State*, 243 Ga. 443, 446 (254 SE2d 830) (1979).

The offense of criminal issuance of a bad check is committed when a person "makes, draws, utters, or delivers a check, draft, or order for the payment of money on any bank or other depository in exchange for a present consideration or wages, knowing that it will

not be honored by the drawee." OCGA § 16-9-20 (a). The heart of the crime, whether its commission is a felony or a misdemeanor, is dishonesty and thus involves moral turpitude. Compare *Hall v. Hall*, 261 Ga. 188 (402 SE2d 726) (1991). Consequently, evidence of pleas of guilty to its commission as a misdemeanor may be considered by a jury for the purpose of impeachment of a witness. See OCGA § 24-9-84.

The trial court did not err in refusing to suppress the objected-to cross-examination attempt to impeach Carruth on the basis that the bad check convictions did not involve moral turpitude.

*Judgment affirmed. Carley, P. J., and Judge Arnold Shulman concur.*

DECIDED JANUARY 21, 1992 —
RECONSIDERATION DENIED FEBRUARY 3, 1992 — ▮

*Brian D. Lockerbie*, for appellant.
*Willis, McKenzie & Long, Edward L. Long, Jr.*, for appellee.