A92A2284. STATE OF GEORGIA v. WILBANKS.
(430 SE2d 668)

ANDREWS, Judge.

A purchase of 1.4 grams of cocaine was made by a confidential informant acting at the direction of the North Georgia Narcotics Enforcement Team (NET) from the appellee James Bradford Wilbanks at his mobile home residence located on 4.37 acres of real property. NET executed a search warrant on the real property and seized from the mobile home 6.6 grams of cocaine found in a cookie jar in the kitchen, 12.8 grams of marijuana on top of a TV set in the living room, a .367 Smith & Wesson pistol found on a table in the master bedroom, a .22 Caliber rifle and a Browning 12-gauge shotgun found in the master bedroom closet, a set of Ohaus scales found in the master bath, and a programmable scanner found on the kitchen counter.

After Wilbanks pled guilty to possession of more than one ounce of marijuana and possession with intent to distribute cocaine, the State, acting by and through the District Attorney of Murray County, filed a complaint for forfeiture of the real property, weapons and per-

sonalty pursuant to OCGA § 16-13-49. Following a bench trial, the court declared the weapons, scales and scanner to be contraband and subject to forfeiture.

Wilbanks also owned the mobile home and a 4/6 interest in the real property. The court determined that his interest in both the mobile home and the real property within the curtilage was "directly or indirectly, used and intended for use to facilitate the possession of cocaine and marijuana in violation of OCGA § 16-13-30" and was therefore subject to forfeiture pursuant to OCGA § 16-13-49 (d) (2).[1] Nevertheless, the court determined that: "only the mobile home and curtilage thereto, rather than the entire 4.37 acres of land, is forfeited to the State pursuant to § 16-13-49 (d) (2)."

1. In its sole enumeration of error, the State contends that the court erroneously interpreted the language and legislative intent of the statute by limiting the real property forfeiture to the curtilage, instead of determining that the entire 4.37 acres was subject to forfeiture. The State argues that OCGA § 16-13-49 (d) (2) mandates that upon a finding that any portion of the real property was used to facilitate a drug transaction, the entire tract of land must be forfeited to the State. We do not agree.

OCGA § 16-13-49 (d) (2) provides that "[a]ll property which is, directly or indirectly, used or intended for use in any manner to facilitate a violation of [the Georgia Controlled Substances Act][2] or any proceeds derived or realized therefrom" is declared to be contraband in which no person has a property right. "Property" includes any interest in real property and any fixtures thereon. OCGA § 16-13-49 (a) (9).

By its explicit language, OCGA § 16-13-49 (d) (2) contemplates that a trial court make a factual determination of what property was "directly or indirectly, used or intended for use" in conjunction with drug violations. Had the legislature intended that *all* of the property on which a drug violation occurred was subject to forfeiture, it could have used language to so indicate.

Unlike OCGA § 16-13-49 (d) (2), 21 USC § 881 (a) (7), the federal statute regarding forfeitures for drug violations, clearly denotes that *all* property which is used in "any manner or part" to facilitate

---

[1] The remaining two-sixth interest in the real property is owned by Wilbanks' stepchildren. The State does not contest that their interest in the real property was exempt from forfeiture pursuant to OCGA § 16-13-49 (e). See generally *State of Ga. v. Jackson*, 197 Ga. App. 619 (1) (399 SE2d 88) (1990).

[2] OCGA § 16-13-49 (d) (3) extends this definition to "all property located in this state which was, directly or indirectly, used or intended for use in any manner to facilitate a violation of this article or of the laws of the United States or any of the several states relating to controlled substances which is punishable by imprisonment for more than one year or any proceeds derived or realized therefrom. . . ."

such illegal act is subject to forfeiture. More specifically, the federal statute states that a violation under that act will result in a forfeiture of "all real property, including any right, title and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of [a drug offense]. . . ."

Because of the difference between the Georgia and federal statutes, the federal cases construing 21 USC § 881 (a) (7), which the State cites in support of its position here, are inapposite. Similarly, the State's reliance on *In the Matter of a Parcel of Real Property Known as 1632 N. Santa Rita, Tucson*, 801 P2d 432 (Ct. App. Ariz. 1990) is misplaced since the Arizona Statute (ARS § 13-2314) at issue in that case is similar to the federal one. Thus, unlike the result here, the Arizona court rationally could conclude: "*all* property used to facilitate the commission of the offense is subject to forfeiture." Id. at 437.[3]

Although the trial court's interpretation of OCGA § 16-13-49 (d) (2) was proper, it is unclear from the trial court's order the portion of land to which the trial court's term "curtilage" applies. Accordingly, the case is remanded to the trial court for a legal description of the property termed the "real property within the curtilage of the mobile home."

2. Wilbanks argues in his brief that the trial court made no finding that the mobile home had a permanent foundation or was affixed to the land so as to become a part of the real property, rather than only being temporarily parked thereon, in order to authorize the forfeiture of the land. However, Wilbanks did not file an appeal as to the forfeiture of the land within the curtilage and did not enumerate this as error. Moreover, it does not appear from the record that this issue was raised in the proceedings below, and it will not be considered for the first time on appeal. *Carruth v. Brown*, 202 Ga. App. 656, 657 (415 SE2d 470) (1992).

*Judgment affirmed with direction. McMurray, P. J., Cooper, Johnson and Blackburn, JJ., concur. Pope, C. J., Birdsong, P. J., and Beasley, P. J., dissent.*

BEASLEY, Presiding Judge, dissenting.
I respectfully dissent.

---

[3] Although the State cites *In re Land Located in Effingham, New Hampshire*, 561 A2d 1061 (NH 1989), the issue in that case was whether the owner was aware of the drug violations taking place on his property. For a general overview of this area see Ana Kellia Ramares, Annotation, *Real Property as Subject of Forfeiture Under Uniform Controlled Substances Act or Similar Statutes*, 86 ALR4th 995 (1991).

Wilbanks argues that the State's reliance upon federal cases holding to the contrary is misplaced because the Georgia statute does not explicitly state, as does 21 USC § 881 (a) (7), that a violation of that act will result in a forfeiture of "[a]ll real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of [a drug offense]. . . ." The federal forfeiture statute originated in 1970. Pub. L. 91-513, Title II, § 511. Among its amendments since then is subsection (a) (7), which was added with certain other subsections in 1984. Pub. L. 98-473, 306 (a). The Georgia statute originated in 1974. Ga. L. 1974, p. 221, § 1. Section 16-13-49 was rewritten in 1991, effective before the seizure in this case. Ga. L. 1991, p. 886, § 1. Prior to rewriting, it did not include real property.

A cardinal rule of statutory construction is that "the court must first ascertain the legislative intent in enacting the law and then construe the law to implement that intent. [Cit.]" *State of Ga. v. Jackson*, 197 Ga. App. 619, 620 (1) (399 SE2d 88) (1990). The legislature used broadly inclusive language in OCGA § 16-13-49 (d) (2): "all property," and "directly or indirectly," and "used or intended for use in any manner to facilitate." This clearly signifies the intent of the legislature that the entirety of any property, including real estate, be forfeited. Although it did not explain these plain words by describing their fullness in detail, as did the federal statute, it did not limit these all-inclusive words either.

We have recognized that the State's interest in a forfeiture proceeding "is only to prevent a guilty party from further misusing the property," and is thus remedial in nature. *State of Ga. v. Sewell*, 155 Ga. App. 734, 735 (2) (272 SE2d 514) (1980). The legislature explicitly expressed its intent by directing in subsection (z) that "[t]his Code section must be liberally construed to effectuate its remedial purposes." The federal forfeiture statute contains no such clear legislative directive.[4] Neither did the Georgia statute before the amendment, when it was *strictly* construed. See *State of Ga. v. Jackson,* supra.

To permit the forfeiture of only an internal portion of a tract of land, not even including the access by which the drugs were brought in, as the trial court did here, according to the State's undisputed description below, thwarts the legislative intent and in addition results in many problems of practical usage and conveyance, which the

---

[4] The federal *criminal* forfeiture statute does. See 21 USC § 853 (o); *United States v. Littlefield*, 821 F2d 1365 (9th Cir. 1987).

legislature may have recognized. One of the principles of statutory construction applicable here is quoted in *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981): " '[T]he language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent.' "

In *In the Matter of a Parcel of Real Property Known as 1632 N. Santa Rita, Tucson*, 801 P2d 432 (Ct. App. Ariz. 1990), the Arizona Court of Appeals considered the same issue, under ARS § 13-2314 (F). It allows state forfeiture in racketeering cases, which covers possession of marijuana for sale. One of the categories subject to forfeiture, in subsection (3), is "all . . . property . . . used or intended to be used in any manner or part to facilitate the commission of the offense." That court ascertained that this subsection "serves two purposes. It deprives the defendant of the means to commit further offenses, and it also helps the state defray the expenses of the investigation and prosecution. Based on the first purpose alone, the statute can be fairly characterized as remedial." Id. at 436 (1). It further determined that, "like the federal statute, A.R.S. § 13-2314 (F) states that *all* property used to facilitate the commission of the offense is subject to forfeiture." (Emphasis in original.) Id. at 437 (5). The Arizona statute does not contain the detail found in the federal statute. Nevertheless, the operative words were "all property." Those same all-inclusive words are used in the Georgia statute. See also *In re Land Located in Effingham, New Hampshire*, 561 A2d 1061 (NH 1989) (entire 84-acre tract forfeited although marijuana found growing on only a portion of it; issue was whether the owner was aware of the drug violation).

The trial court incorrectly ruled that under the statute only real property within the curtilage of the mobile home is forfeited. No such carving out is contemplated by the statute. Of course, the innocent owners' interests are protected. OCGA § 16-13-49 (e).

I am authorized to state that Chief Judge Pope and Presiding Judge Birdsong join in this dissent.

DECIDED MARCH 19, 1993 —
RECONSIDERATION DENIED APRIL 2, 1993

*Jack O. Partain III, District Attorney, Gary D. Bergman, Special Assistant District Attorney*, for appellant.
*William W. Keith III, Karen E. Luffman*, for appellee.