COMMONWEALTH of Pennsylvania

v.

WINGAIT FARMS.

Appeal of George REITZ, Appellant.
(Three Cases.)

COMMONWEALTH of Pennsylvania

v.

ONE HORSE KNOWN AS "OLYMPIAKOS", One Horse Known as "Marmalade's Feast", One Horse Known as "Mijita Rica", One Horse Known as "Mijita Rica's Foal", One Horse Known as "Call Me Goin", One Horse Known as "Double Leader", One Horse Known as "Yearling Colt Out of Majestic Royal",

One Horse Known as "Yearling Colt Out of Crafty & Hasty", One Horse Known as "Blaze Leader", One Horse Known as "Liebenbeck", One Horse Known as "Baquette", One Horse Known as "Yearling Colt Out of Princess Kameha", One Horse Known as "Yearling Colt Out of C–Diana", One Horse Known as "Independent Leader", One Horse Known as "Damascus House", One Horse Known as "Damascus House Foal", One Horse Known as "Grape Jam", One Horse Known as "Grape Jam's Foal".

COMMONWEALTH of Pennsylvania

v.

HORSES: PRINCESS KAMEHA TRACK BARRIN.

COMMONWEALTH of Pennsylvania

v.

WINGAIT FARMS.

Appeal of Linda REITZ, Appellant.

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1995.
Decided May 8, 1995.
Reargument Denied June 29, 1995.

---

5. In addition to alternating weekends, Judge Jackson awarded partial custody to Mother for one-half of the Winter and Spring school vacations, and for six weeks during Daughter's Summer school vacation.

Albert J. Cepparulo, for appellant George Reitz.

Marc I. Rickles, for appellant Linda Reitz.

Stephen B. Harris, Chief of Appeals, for appellee.

Before McGINLEY and NEWMAN, JJ., and DELLA PORTA, Senior Judge.

NEWMAN, Judge.

George Reitz (Reitz) appeals an order of the Court of Common Pleas of Bucks County (trial court) forfeiting Wingait Farms (a horse farm), twenty-seven horses and various articles of personal property. The trial court entered the order pursuant to a jury verdict that found Reitz used this property to facilitate violations of The Controlled Substance, Drug, Device and Cosmetic Act (Drug Act) [1]. Reitz's wife, Linda, appeals from the trial

1. Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. §§ 780-101—780-144.

court's entry of a directed verdict against her, based on its determination that she did not have an ownership interest in Wingait Farms.[2] We affirm.

## PROCEDURAL HISTORY

In Spring 1992, the Bucks County District Attorney's Office and local law enforcement officials conducted an undercover investigation of Reitz's narcotics trafficking activities. One of Reitz's associates, Edward Stanton, cooperated in the investigation by wearing an electronic recording device that he used to record conversations with Reitz regarding drug transactions. On May 7, 1992, Reitz was arrested for delivering twenty-nine pounds of marijuana to Stanton. Reitz pled guilty to a variety of criminal charges relating to the sale and distribution of marijuana, including corrupt organizations, possession with intent to deliver, dealing in unlawful proceeds and conspiracy. On March 22, 1993, the trial court sentenced him to a term of seven and one-half to twenty years in the state penitentiary, and ordered him to pay fines and restitution totalling $140,000.

On May 8, 1992, the day after Reitz's arrest, the trial court issued an order enjoining Reitz from transferring or conveying Wingait Farms. Shortly thereafter, the Commonwealth, pursuant to the Controlled Substance Forfeiture Act (Forfeiture Act), 42 Pa.C.S. §§ 6801–6802, filed petitions seeking forfeiture of real and personal property including Wingait Farms, horses, farming equipment, household items, and motor vehicles. On October 12, 1993, a jury trial commenced on the forfeiture petitions. The jury reached a verdict on October 20, 1993, based on which the trial court ordered the forfeiture of Wingait Farms, various items of personal property and Reitz's interest in twenty-seven horses. The instant appeals followed.

## FACTUAL BACKGROUND

### Wingait Farms

Wingait Farms is comprised of two sixty-five acre parcels in Springfield Township, Bucks County. Reitz purchased Wingait Farms in August 1983 for $300,000.00. He and Linda were married on October 3, 1987. The day before the wedding they executed an antenuptial agreement which provided, *inter alia*, that Wingait Farms was Reitz's sole and separate property, and that Linda would have no claim against Wingait Farms or any other property owned by Reitz.

The Reitzes moved to Wingait Farms in late 1988 or early 1989. They used the farm for horse breeding, a hay business and growing Christmas trees. Linda was actively involved in the renovation of the property and the operation of the farm.

Prior to the arrest of Reitz in May 1992, he and his wife never took any action to rescind the antenuptial agreement. However, on October 7, 1993, five days before the forfeiture trial began, the Reitzes entered into a written stipulation stating that the antenuptial agreement was null and void.

### Forfeiture Trial

Haig Palouian (Palouian), a high school classmate of Reitz who began distributing marijuana for him in 1988, testified at the forfeiture trial. He testified that in November 1990, he visited Wingait Farms where he saw approximately thirty to forty pounds of marijuana spread out on a pool cover in a third floor bedroom. Palouian helped Reitz package and weigh the marijuana.

Palouian also testified that in 1991, Reitz placed a fifty-five gallon plastic barrel in Palouian's basement for the purpose of storing marijuana. On three occasions in 1991, Reitz had shipments of thirty to forty pounds of marijuana delivered to Palouian's house. Each time they packaged and weighed the marijuana together before Reitz removed it from the premises.

Reitz admitted that he placed the barrels in Palouian's basement for storing marijuana, and also admitted that he had two similar barrels on his property. When police searched Wingait Farms, they found the two barrels buried behind the horse barn.

---

**2.** Because the jury found that Linda Reitz was a co-owner of the twenty-seven horses, the court declared her to be co-owner, along with the Commonwealth, of the funds generated from the sale of the horses. The Commonwealth did not appeal this portion of the order.

Thomas Haley (Haley), one of Reitz's marijuana suppliers, also testified at the forfeiture trial. They first met in New Mexico in 1985, at which time Reitz expressed an interest in obtaining marijuana. In 1988, Haley telephoned Reitz at Wingait Farms offering to sell him fifty-five pounds of marijuana. Reitz made the purchase through an intermediary for $40,000.00.

In December 1991, Haley again called Reitz at the horse farm and offered to sell him marijuana at $1,150 per pound. Haley drove forty to forty-five pounds of marijuana to Bucks County where he delivered it to the home of Reitz's sister and brother-in-law Anna and David Ganteaume. In January 1992, Haley delivered another forty pounds of marijuana to the Ganteaume residence.

Haley testified that in March 1992 he met with Reitz at a hotel in Philadelphia. Reitz showed him an appraisal of his horses to impress him with their value.

On or about May 1992, Haley transported 101 pounds of marijuana to King of Prussia where he transferred it to a van pursuant to arrangements made by Reitz. At the time of delivery, Reitz paid Haley $23,000. The agreed upon price for this sale was $1,125 per pound.

Haley testified that he received approximately $110,000.00 to $115,000.00 from Reitz for the sale of marijuana. When Reitz was arrested in May, 1992, he still owed Haley $90,000.00.

Edward Stanton (Stanton) testified that in 1986 or 1987 Reitz began supplying him with marijuana that he sold to other individuals. Stanton was arrested in March 1992 and agreed to cooperate with authorities in their investigation of Reitz. At that time he owed Reitz $39,000.00.

At the forfeiture trial, Stanton testified concerning a number of drug transactions. On March 16, 1992, Stanton met Reitz at a restaurant in Bensalem Township, Bucks County, where he paid him $3,000.00 toward his $39,000.00 debt. Detective Baronowski of Middletown Township testified that he followed Reitz from the restaurant to Wingait Farms.

Stanton met Reitz at Wingait Farms on March 23, 1992 and paid him another $3,000.00. At that meeting, Reitz produced a document referred to as an "owe" sheet, which indicated the amounts that Stanton and others owed him for marijuana that he delivered to them. The "owe" sheet was kept in the office at the farm.

On March 27, 1992, Stanton telephoned Reitz at Wingait Farms regarding a delivery of marijuana. Reitz instructed Stanton to go to a diner in Bucks County where his sister would meet him. Reitz's sister arrived at the arranged location in Reitz's vehicle and delivered two pounds of marijuana to Stanton.

Stanton met Reitz at Wingait Farms on March 30, 1992 and delivered $11,000.00 to him in partial payment for the marijuana he had received.

On April 6, 1992, Stanton met Reitz at Chi–Chi's Restaurant in Middletown Township and paid him $3,000.00. They met at the same restaurant on April 15, 1992, at which time Stanton paid him $12,000.00. Reitz placed the money in his vehicle and drove to Wingait Farms. The two met again a week later at a restaurant in Doylestown, where Stanton made a payment of $8,000.00 to Reitz.

Stanton and Reitz next met on May 4, 1992 at Chi–Chi's Restaurant. During the meeting, which was recorded by Stanton, Reitz stated that he needed to collect drug payments owed to him in order to make his payroll at Wingait Farms. This taped conversation was played to the jury at the forfeiture trial. However, Reitz testified that he was lying when he made that statement to Stanton.

On May 7, 1992, Reitz delivered twenty-nine pounds of marijuana to Stanton in a cardboard box with the name "Saxon" printed on it. Following the delivery, Reitz was arrested.

Detective Baronowski testified that a subsequent search of the attic at Wingait Farms yielded numerous "Saxon" boxes identical to the one Reitz used to deliver marijuana to Stanton. Among other items found during the search were two fifty-five gallon barrels similar to the one in Palouian's basement,

two scales, two suitcases containing marijuana residue, and "owe" sheets that were hidden behind the molding of the door to Reitz's office. Detective Baronowski testified that the "owe" sheets indicated Reitz had delivered marijuana worth $483,760.00.

### Appeal of George Reitz

On appeal, Reitz contends that the trial court erred when it 1) refused requests for a jury instruction regarding whether a substantial and proportionate relationship existed between the criminal activity alleged and the property sought to be seized; 2) refused Reitz's motion to dismiss on grounds of double jeopardy; 3) refused Reitz's motion in limine regarding electronic surveillance because there is no statutory authorization to use such evidence in a non-criminal proceeding; 4) refused Reitz's motion in limine to prohibit use of testimony regarding his drug activity; 5) refused Reitz's motion that the Commonwealth should bear the burden of proving entitlement to forfeiture beyond a reasonable doubt; 6) refused Reitz's motion to prohibit the shifting of the burden of proof; 7) gave the jury a summation of the evidence presented at trial; 8) refused to bifurcate the trial; 9) permitted the Commonwealth to produce redacted tape recordings between Reitz and various individuals; 10) permitted testimony of a Commonwealth witness who refused to be deposed; 11) provided the jury with a verdict sheet that Reitz maintains was incorrect; and, 12) directed a verdict against Linda before the presentation of her evidence. Reitz also argues that substantial evidence did not exist to support the verdicts.

### I.

With regard to the first issue raised by Reitz, Section 6801(a)(6)(i)(C) of the Forfeiture Act states:

(a) Forfeitures generally. The following shall be subject to forfeiture to the Commonwealth and no property right shall exist in them:

. . . . .

(6)(i) All of the following:

. . . . .

(C) Real Property used or intended to be used to *facilitate* any violation of The Controlled Substance, Drug, Device and Cosmetic Act, including structures or other improvements thereon, and including any right, title and interest in the whole or any tract of land and any appurtenances or improvements, which is used or intended to be used, in any manner or part, to commit or to *facilitate* the commission of a violation of the Controlled Substance, Drug, Device and Cosmetic Act, and things growing on, affixed to and found in the land.

42 Pa.C.S. § 6801(a)(6)(i)(C) (emphasis added).

Based on this section, the trial court gave the following instruction to the jury:

As to Miscellaneou [sic] matter 424, dealing with the farm and consisting of approximately 130 acres and numerous buildings, you will be called upon to consider the following question: are you satisfied by a fair preponderance of the evidence that George Reitz, Jr. used the farm including the structures to facilitate any violation of the drug act.

Facilitate meaning to use, promote, aide [sic], make easier, simplify and make less difficult, the enterprise that the plaintiff here is accusing Mr. Reitz of engaging in and which he admits that he did.

He did not use the farm in any way, shape or form according to him but it is the plaintiff's position that he used the farm to facilitate his drug trafficking.

Reproduced Record at 1035a–1036a.

Reitz argues that the trial court's instructions were erroneous because they did not inform the jury regarding the existence of a significant relationship and proportionality between the property seized and the underlying criminal activity in which the property was used. Reitz notes that in *Austin v. United States,* —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), the Supreme Court held that forfeiture, although a civil proceeding, is limited by the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. Our Supreme Court in the case of *In re King Properties,* 535 Pa.

321, 635 A.2d 128 (1993) referred to *Austin*, and stated:

> We agree with Mr. Justice Scalia that in determining whether a forfeiture is an excessive fine, and therefore disproportionate, the inquiry does not concern the value of the thing forfeited, but the relationship of the offense to the property which is forfeited. If the forfeited property was significantly used in the commission of the offense, the item may be forfeited regardless of its value.

*Id.* at 330, 635 A.2d at 133.

Reitz argues that the trial court's instructions disregarded the significant relationship criterion established in *Austin* and *King* and, therefore denied him a fair trial.

Our review of the record indicates that the trial court did not err in failing to instruct the jury according to Reitz's proposed charge. It is well-settled that in reviewing the trial court's charge, the proper test is whether the charge in its entirety demonstrates that the court committed prejudicial error. *Reilley by Reilley v. Southeastern Pennsylvania Transportation Authority*, 507 Pa. 204, 489 A.2d 1291 (1985).

■ We agree with the Commonwealth that the issue before a jury in a forfeiture trial is whether the property in question was used to facilitate violations of the Drug Act. It is not within the province of the jury to determine the constitutional issue of whether forfeiture is a disproportionate and excessive fine in violation of the Eighth Amendment to the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution. We note that in *Austin*, the United States Supreme Court did not remand the case to the fact-finder (the District Court), but to the Court of Appeals for consideration of whether the forfeiture was an excessive fine.

■ In *Commonwealth v. Schill*, 164 Pa.Commonwealth Ct. 594, 643 A.2d 1143 (1994), this court stated that the Commonwealth bears the initial burden of proving by a preponderance of the evidence that there is a nexus between the unlawful activity and the property sought to be forfeited. Our review of the charge indicates that the trial court properly instructed the jury regarding the Commonwealth's burden of proof and the definition of the word "facilitate" as it is used in the relevant statute. Therefore, we conclude that the trial court did not commit reversible error with regard to the jury charge.

## II.

Reitz next argues that the trial court erred in refusing to dismiss the forfeiture proceeding as violative of the Double Jeopardy Clause of the United States and Pennsylvania Constitutions. In support of his position, Reitz relies on *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). Halper, a manager of a company that provided health care services to Medicare patients, filed sixty-five medicare claims seeking reimbursement of twelve dollars for services worth three dollars. He was convicted under the criminal false claims statute, 18 U.S.C. § 287, and was sentenced to two years in prison and fined $5,000.00. The government then sought a civil penalty of $2,000.00 per violation pursuant to the False Claims Act, 31 U.S.C. §§ 3729–3731. The District Court found that the imposition of a $130,000.00 civil fine constituted double jeopardy. On direct appeal, the Supreme Court agreed and held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.* at 448–449, 109 S.Ct. at 1902. Reitz argues that the forfeiture of his property is an impermissible nonremedial penalty.

Reitz's position ignores the fact that the *Halper* court also stated, "What we announce now is a rule for the rare case ... where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused." *Id.* at 449, 109 S.Ct. at 1902. Halper overcharged Medicare $585.00, for which the government sought a fixed civil penalty of $130,000.00. In contrast, Reitz was by no means a "small-gauge offender;" he delivered marijuana worth $483,760.00. The potential damage to society from the use

of such a quantity of marijuana is incalculable.

Although there is no Pennsylvania appellate case that presents a Double Jeopardy Clause challenge to the forfeiture statute, such a challenge was raised in the Arizona case of *In the Matter of a Parcel of Real Property Known as 1632 N. Santa Rita, Tucson, Arizona,* 166 Ariz. 197, 801 P.2d 432 (1990). The appellant was charged with a variety of offenses after a search of his house yielded 341 marijuana plants and four pounds of processed marijuana. The appellant entered into a plea agreement and was convicted of unlawful possession of marijuana. He was placed on two years probation and was fined $345.50. Following a hearing, the trial court ordered a forfeiture of appellant's home. On appeal, he contended that pursuant to *Halper,* the forfeiture was impermissible because it was not remedial.

The Arizona Court of Appeals noted that compensating the government for its costs and damages is not the only remedial purpose encompassed in a forfeiture statute. The court stated:

> For example, in *U.S. v. One Assortment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984), forfeiture of firearms under the Gun Control Act of 1968 was held to be remedial because it sought to control the indiscriminate flow of firearms by removing from circulation firearms that have been used or intended to be used outside the regulated channels of commerce. As the Court states: 'Keeping potentially dangerous weapons out of the hands of unlicensed dealers is a goal plainly more remedial than punitive.' 465 U.S. at 364, 104 S.Ct. at 1106, 79 L.Ed.2d at 369–70.

*1632 N. Santa Rita,* 166 Ariz. at 197, 801 P.2d 432 at 435–436.

■ The court examined the forfeiture statute and held that it serves the purpose of depriving the defendant of the means to commit additional offenses and also helps the state defray the costs of investigation and prosecution. For these reasons, the court determined that the statute could fairly be characterized as remedial. Our review of the Forfeiture Act indicates that it serves similar purposes, and therefore it is remedial rather than punitive. For these reasons, the trial court did not err when it refused Reitz's request to dismiss the forfeiture proceeding on the basis that it violated the Double Jeopardy Clause.

### III.

During the forfeiture trial, the jury was permitted to hear portions of recorded conversations between Reitz and a police informant. On appeal, Reitz argues that the trial court erred in permitting the jury to hear the intercepted conversations because Section 5717 of the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§ 5701–5781, only permits electronic surveillance evidence to be introduced in criminal proceedings. Section 5717(b) states:

> Any person, who by means authorized by this chapter, has obtained knowledge of the contents of any wire, electronic or oral communication, or evidence derived therefrom, may disclose such contents or evidence ... while giving testimony under oath or affirmation in any criminal proceeding....

18 Pa.C.S. § 5717(b).

Pursuant to Section 5717(b), Reitz argues that wiretap evidence cannot be introduced in a forfeiture trial because it is a civil proceeding.

Central to our analysis of this issue is the fact that the purpose of the Wiretapping and Electronic Surveillance Control Act is the protection of privacy. *Commonwealth v. Spence,* 428 Pa.Superior Ct. 548, 631 A.2d 666 (1993). In the instant matter, seven and one-half hours of conversation were intercepted during the investigation into Reitz's criminal activity. At a preliminary hearing for Reitz and other defendants on September 29, 1992 and September 30, 1992, the Commonwealth disclosed all the intercepted conversations by playing the tapes in open court.[3]

---

**3.** In the criminal matter, no pretrial motions were filed to exclude the intercepted conversa-

tions.

Once the tapes were played in open court, their contents became part of the record and were revealed to the media and anyone who attended the preliminary hearing. Because of this public disclosure, Reitz's expectation of privacy in the communications ceased to exist. Accordingly, at the forfeiture trial, the protection of privacy, which is the purpose of the Wiretapping and Electronic Surveillance Control Act, was no longer an issue. Therefore, the trial court did not err in permitting the Commonwealth to introduce the taped conversations into evidence.

### IV.

Reitz next maintains that the Commonwealth erred by denying his motion in limine to preclude the Commonwealth from introducing evidence of illegal activities that he alleges did not relate specifically to property sought to be forfeited.

The exclusion or omission of evidence at trial is within the discretion of the trial court, and a new trial should be granted only where there is a clear abuse of discretion. *DeVita v. Durst,* 167 Pa.Commonwealth Ct. 105, 647 A.2d 636 (1994), *petition for allowance of appeal denied,* —— Pa. ——, 655 A.2d 993 (1995). Regarding to the admissibility of evidence, this court recently stated:

> Evidence is admissible when it is relevant to a fact sought to be proved.... Relevant evidence tends to make a fact more or less probable and need not prove conclusively the proposition for which it is offered.... Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion; prejudice does not refer to being detrimental to one party's case but refers to an undue tendency to suggest a decision on an improper basis.

*Fernandez v. City of Pittsburgh,* 164 Pa.Commonwealth Ct. 662, 671, 643 A.2d 1176, 1181 (1994) (citations omitted).

In his brief, Reitz argues that the trial court erred in permitting the jury to hear evidence regarding the storage of marijuana at the home of Haig Palouian, details of the drug activities of Tom Haley, and events that took place in various locations other than Wingait Farms. We note initially that the petitions filed by the Commonwealth sought the forfeiture of property other than Wingait Farms, such as vehicles and horses owned by Reitz. With regard to the storage of marijuana at Palouian's house, the trial court did not err in admitting evidence that Reitz placed barrels in Palouian's basement that were similar to ones buried at Wingait Farms. Clearly, this evidence was relevant to the issue of whether marijuana had been stored on the property. Evidence of Thomas Haley's drug activity was also properly admitted because it is relevant to Haley's telephone calls to Reitz at Wingait Farms offering to sell him marijuana. Testimony regarding the meeting between Haley and Reitz in Philadelphia in 1992 is relevant to the forfeiture action because at that meeting Reitz showed Haley an appraisal of his horses. Testimony about activity at locations other that Wingait Farms was also properly admitted. For example, testimony regarding Haley's delivery of marijuana to the home of Reitz's sister and brother-in-law is relevant because Reitz was at Wingait Farms when he made arrangements for the delivery. Testimony regarding Reitz's sister delivering marijuana to Stanton at a Bucks County diner was also relevant because she was driving Reitz's vehicle.

Our review of the record indicates that the trial court did not abuse its discretion by admitting evidence of the illegal activities of Reitz and other individuals. Because such evidence was relevant to the forfeiture proceedings, and was not unduly prejudicial to Reitz, we deny his request for a new trial.

### V.

Reitz next contends that the trial court erred in refusing his motion asking that the standard of proof in a forfeiture proceeding be proof beyond a reasonable doubt. He cites three reasons for applying the standard of proof for a criminal conviction in a forfeiture proceeding: 1) it is brought by the state; 2) it results from allegations of criminal activity; and, 3) it is based upon the criminal use of property.

This position is contrary to law. As we previously noted, in *Schill,* this court stated that the Commonwealth bears the initial burden of proving by a preponderance of the evidence that there is a nexus between the unlawful activity and the property sought to be forfeited. The preponderance of the evidence standard is consistent with the fact that forfeiture is a civil proceeding. Consequently, the trial court did not err when it charged the jury regarding the standard of proof.

## VI.

■ Consistent with his erroneous belief that a property owner in a forfeiture hearing is entitled to the same protections as a criminal defendant, Reitz argues that the trial court erred when it denied his motion to prohibit the shifting of the burden of proof pursuant to Section 6802(j) of the Forfeiture Act, 42 Pa.C.S. § 6802(j). Pursuant to Section 6802(j), once the Commonwealth produces evidence that property was unlawfully used or possessed, the burden shifts to the claimant to show that it was not unlawfully used or possessed by him. Reitz correctly notes that in a criminal matter, the prosecution must prove beyond a reasonable doubt every fact necessary to constitute the crime charged. *See In re: Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). However, because forfeitures are civil proceedings, the trial court did not err in determining that Section 6802(j) does not impermissibly shift the burden of proof to the claimant.

## VII.

■ Reitz next argues that the trial court erred when it summarized the evidence for the jury. We have reviewed the jury charge in its entirety and find that Reitz's claim is without merit. Furthermore, we note that the trial court instructed the jury, "You and you alone will decide the facts in this case." Reproduced Record at 1029a. The trial court neither abused its discretion nor committed an error of law in summarizing the evidence at the close of the six-day trial.

## VIII.

■ Reitz also raises as error the trial court's denial of his request to bifurcate the trial. The basis of his request for bifurcation was that the jury should have had the opportunity to determine whether the Commonwealth had met its burden of proof before Reitz was required to go forward with his case. Pursuant to Pa.R.C.P. No. 213(b), the trial court may order a separate trial on any issue to avoid confusion or prejudice. The trial court did not abuse its discretion in determining that the issues in this case could be tried together without confusing the jury. Moreover, Reitz is unable to show how the denial of the motion to bifurcate prejudiced him to such a degree that a new trial is required.

## IX.

■ Reitz next maintains that the trial court erred by permitting the Commonwealth to play redacted versions of his taped conversations. As previously noted, the Commonwealth recorded over seven hours of Reitz's conversations during the criminal investigation. Rather than subject the jury to the recordings in their entirety, the trial court allowed the Commonwealth to present relevant portions of the tapes. Reitz argues that the trial court erred, because pursuant to *Hunter v. Hunter,* 169 Pa.Superior Ct. 498, 83 A.2d 401 (1951), recordings are admissible only if the entire tape is introduced into evidence. The court in *Hunter* noted that only under these circumstances can the jury determine if the tape recording is a reliable record of what was said.

In the instant case, all the tapes were played at Reitz's preliminary hearing. Reitz's counsel in the forfeiture proceeding was present during the preliminary hearing and was provided with transcripts of the intercepted conversations. At the forfeiture trial, Reitz's counsel stipulated that the transcripts provided by Detective Potts of the Bucks County Detectives Office were an accurate depiction of the contents of the tapes. Reproduced Record at 82. Detective Potts also testified that he was able to play portions of the tapes at trial for either the Commonwealth or Reitz. Reproduced Rec-

ord at 739. Under these circumstances, the concerns in *Hunter* regarding the reliability of recordings were not present in this matter. Accordingly, the trial court's decision to permit the Commonwealth to introduce selections of the intercepted conversations was not an error.

### X.

Reitz argues that the trial court erred in permitting the Commonwealth to call Thomas Haley, a convicted drug supplier, as a witness, despite the fact that he refused to be deposed by Reitz's counsel prior to trial. Reitz's counsel sent a notice of deposition to Haley's counsel who refused to make his client available for deposition. Reitz's counsel did not seek a pretrial order to compel Haley's deposition as provided by Pa.R.C.P. No. 4019(g)(1), nor did he serve interrogatories on him. However, at trial Reitz sought to have the court prevent Haley from testifying as a sanction for his failure to present himself for deposition. Authority for such sanction can be found in Pa.R.C.P. No. 4019(c)(5), which permits the court to impose an order with regard to the failure to provide discovery as the court deems just.

 The imposition of specific sanctions under the rule governing sanctions in the discovery process is within the trial court's discretion. *Poulos v. Department of Transportation*, 133 Pa.Commonwealth Ct. 322, 575 A.2d 967 (1990). As the trial court's decision not to impose a sanction against Haley was not an abuse of discretion, it cannot serve as the basis for granting a new trial to Reitz.

### XI.

Reitz also argues that the trial court erred by providing the jury with a verdict sheet that asked whether it was satisfied by a fair preponderance of the evidence that Reitz had used certain property to "facilitate" violations of the Drug Act. Reitz claims that the verdict sheet had the effect of reinforcing the incorrect definition of the word "facilitate" that the trial court gave while instructing the jury. Because we have already concluded in Section I of this opinion that the jury instruc-

tions were proper, we determine that this issue is without merit.

### XII.

At the close of the Commonwealth's case, the trial court directed a verdict against Linda Reitz with regard to Wingait Farms only, on the basis that she did not have an ownership interest in the property. The trial court reasoned that pursuant to the October 2, 1987 antenuptial agreement, Linda waived her interest in Wingait Farms. Furthermore, the trial court determined that the stipulation signed by the Reitzes in October 1993, which made the antenuptial agreement null and void, was invalid with regard to Wingait Farms because of the restraining order issued May 8, 1992, prohibiting the transfer or conveyance of the property. On appeal, Reitz argues that the trial court erred by entering a verdict against Linda before either of them had the opportunity to testify.

 Pa.R.C.P. No. 226 permits the trial court to direct a verdict at the close of all evidence. Therefore, the granting of a directed verdict following the close of the Commonwealth's case was premature. However, in *Nikole, Inc. v. Klinger*, 412 Pa.Superior Ct. 289, 603 A.2d 587 (1992), the court held that the granting of a directed verdict at the close of the plaintiff's case was not error if the same result would have occurred at the conclusion of the defendant's evidence. In the instant matter, the evidence regarding Linda's lack of ownership was sufficiently clear that we will not disturb the trial court's decision to grant a directed verdict.

### XIII.

 The final issue raised by Reitz is that substantial evidence did not exist to support the jury's verdicts. Substantial evidence exists where the record contains sufficient relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Golden Rule Ins. Co. v. Insurance Department*, 163 Pa.Commonwealth Ct. 509, 641 A.2d 1255 (1994). The following evidence was adduced at trial: "owe" sheets, listing hundreds of thousands of dollars of

drug transactions, were kept in the office at Wingait Farms; large amounts of marijuana were packaged on the property; drug transactions were conducted over the telephone at the farm; Reitz used an appraisal of his horses to impress a supplier with his wealth, and drug proceeds were commingled with the Wingait Farms accounts and were used for payroll. Based on this evidence, the jury properly found that Reitz used Wingait Farms and various items of personal property to facilitate violations of The Controlled Substance, Drug, Device and Cosmetic Act.

### Appeal of Linda Reitz

On appeal, Linda Reitz argues that the trial court erred when it 1) directed a verdict against her because she did not have standing or an ownership interest pursuant to the Forfeiture Act; 2) granted a directed verdict to the Commonwealth before Linda had an opportunity to present evidence; 3) allowed the Commonwealth to present evidence of the antenuptial agreement; and 4) issued a decision that impermissibly applied the "relation back doctrine" to a claim of innocent ownership.

### I.

Linda Reitz argues that she has an ownership interest in Wingait Farms and, therefore had standing to challenge the forfeiture of the property. For this reason, she maintains the trial court erred in directing a verdict against her.

■ The party seeking to challenge the government's forfeiture must demonstrate an interest in the seized item sufficient to contest the forfeiture. *United States v. One 1978 Navajo Pa–31 Aircraft,* 748 F.2d 316 (5th Cir.1984). Linda Reitz claims that by virtue of her marriage and the efforts she expended in running Wingait Farms she somehow gained an ownership interest in the property. She argues that the trial court should have ignored the fact that the property is titled in George Reitz's name, and instead, should have applied a broader definition to the term "ownership". She offers no

relevant authority for this assertion, and therefore, we conclude that the trial court did not err in denying her standing to challenge the forfeiture.

### II.

Linda Reitz also argues that the trial court erred in granting a directed verdict against her at the close of the Commonwealth's case. This issue has been addressed in the discussion of issues raised on appeal by George Reitz, and no further elaboration is required.

### III.

Linda Reitz next claims that the trial court erred by allowing the Commonwealth to admit the antenuptial agreement into evidence. She suggests that the agreement was not relevant to the forfeiture case because the Commonwealth was not intended as a beneficiary of the contract. She maintains that because the agreement was not relevant, the trial court should not have relied on it in reaching its decision regarding ownership of Wingait Farms.

■ The trial court did not abuse its discretion in permitting the Commonwealth to introduce the antenuptial agreement. Clearly, it is relevant to one of the most important issues in the case, the ownership of Wingait Farms. Accordingly, the trial court properly admitted the document.

### IV.

The last issue raised by Linda Reitz is that the trial court's decision was erroneous because it had the effect of applying the common law "relation back doctrine" to a claim of innocent ownership in violation of the United States Supreme Court's decision in *United States v. A Parcel of Land, Buildings, Appurtenances and Improvements Known as 92 Buena Vista Avenue, Rumson, New Jersey, et al.,* —— U.S. ——, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993).[4] Because the trial court correctly determined that Linda Reitz was not an owner of Wingait Farms, and therefore could not avail herself of the

---

4. The "relation back doctrine" applied the fiction that property used in violation of law was itself

the wrongdoer that must be held to account for the harms it had caused. *92 Buena Vista Avenue.*

defense of innocent ownership, we need not address this issue.

For these reasons, we affirm the order of the trial court.

### ORDER

AND NOW, May 8, 1995, we affirm the order of the Court of Common Pleas of Bucks County.