678 A.2d 408

**COMMONWEALTH of Pennsylvania**

v.

**William HIGGINBOTTOM, Appellant.**

Superior Court of Pennsylvania.

Submitted April 1, 1996.

Filed June 12, 1996.

Erwin Miller, Philadelphia, for appellant.

Peter J. Gardner, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CAVANAUGH, KELLY and BROSKY, JJ.

CAVANAUGH, Judge:

William Higginbottom was tried by jury and was found guilty of possession of a controlled substance with intent to deliver and criminal conspiracy.[1] He was sentenced to serve a term of imprisonment for not less than eighteen (18) months nor more than thirty-six (36) months, to be followed by a three (3) year period of probation, and to pay a fine of $5,000. Thereafter, pursuant to a motion for post-sentence relief, Higginbottom's sentence was modified in order to make him eligible to participate in a boot camp program. On direct appeal from the judgment of sentence, Higginbottom asserts that: (1) his trial should have been barred by principles of double jeopardy because he had been subjected to a prior civil forfeiture action arising out of the same drug transaction; (2) the trial court erred by permitting the Commonwealth to present improper expert testimony during rebuttal; (3) his trial counsel was ineffective for failing to call appellant as a rebuttal witness; and (4) the trial court erred by limiting defense arguments during closing argument. After careful review, we affirm the judgment of sentence.

The evidence which was presented at appellant's trial has been summarized by the trial court in the following manner:

The record shows that on April 29, 1994, Police Officers Frank Green and John Keen were in plainclothes. At approximately 6:30 p.m., they established a surveillance post in an unmarked 1975 blue Buick in the 2500 block of Trenton Avenue, Philadelphia. Each officer had a set of binoculars. Officer Green was using his binoculars, and Officer Keen was slouched down trying to hide from view.

1. Higginbottom was tried jointly with co-defendant Richard Hamilton, who was convicted of the same offenses.

Officer Green testified that he observed three white males standing in front of a pizza shop on the corner of Trenton Avenue and Hazzard Street. Officer Green stated that at the time he observed the males, he was approximately seventy-five feet from them and that he had an unobstructed view across Trenton Avenue to their position.

Officer Green saw an unidentified white male approach co-defendant Richard Hamilton, engage him in a short conversation, and hand him what Officer Green believed to be U.S. currency. Hamilton put the money in his left front pocket and pointed to the defendant, William Higginbottom. The white male then approached defendant Higginbottom, who reached inside his shorts in the groin area and removed a brown paper bag. Higginbottom took a number of small bright yellow packets from the brown bag and handed them to the white male who then walked away from the scene.

Approximately five minutes later, a Pontiac Firebird stopped in the middle of the street in front of the pizza shop. Both defendants stepped off the sidewalk into the street and approached the driver's window of the Firebird. Defendant Hamilton accepted what Officer Green believed to be U.S. currency from the driver of the vehicle, and defendant Higginbottom withdrew the brown paper bag from his pants and handed the driver a bright yellow packet from the bag.

Officer Green informed Officer Keen of what was happening, and Officer Keen relayed the information by radio to Sergeant William Britt, who was also in plainclothes, in an unmarked vehicle which was parked around the corner from the pizza shop.

Sergeant Britt radioed for uniformed back-up units to come to his location and when they arrived advised them and Officer Keen to move to the pizza shop.

Officer Keen drove his vehicle to the corner of Trenton Avenue and Hazzard Street. The only persons standing on the corner at that time were defendants Higginbottom and Hamilton. When Officer Green left the vehicle being driven by Officer Keen, defendant Hamilton ran north on Trenton

Avenue. Officer Keen pursued him in the vehicle and stopped him. Defendant Higginbottom was placed under arrest by Officer Green and Sergeant Britt.

Following Officer Green's directions, Sergeant Britt retrieved a brown paper bag (Exhibit C–2) from the defendant's pants. Officer Green identified C–2 as the same bag the defendant had hidden in his pants. The bag contained forty yellow tinted packets which held a total of 5.44 grams of a cocaine-based substance. C–2, the bag, had a list of numbers with additions or subtractions, and the word "Birdie" was marked on it in blue ink. Defendant Higginbottom also had $252.00 in cash on his person.

William Higginbottom denied that he had engaged in the drug transactions as described by Officer Green. He testified that he had purchased forty nickel bags, i.e. bags which would sell for $5.00, for $160.00 earlier in the day. He claimed that he had received a discount for purchasing in quantity. Defendant Higginbottom testified that he initially went to the corner of 4th and Berks Streets, at which location he had purchased drugs in January of 1994. The dealer he had patronized in January was not there so he went to Fourth Street and Cecil B. Moore Avenue to purchase the drugs. He stated that he purchased the drugs for his personal use, not for resale.

Defendant Higginbottom testified that on the day in question, he had borrowed his cousin's car, drove to Fourth Street and Cecil B. Moore Avenue and purchased the forty bags. He returned the car to his cousin, who lived at Trenton and Hazzard Streets next door to the pizza shop, and was talking to Wayne Malcolm and Richard Hamilton, the co-defendant, when the police arrived in several cars and arrested all three of them. Wayne Malcolm was not charged and was subsequently released. Defendant Higginbottom also testified that the police did not find the brown bag until they strip-searched him at the police station.

Wayne C. Malcolm, the individual who was arrested at the same time as defendants Higginbottom and Hamilton testified that he was standing on the corner talking with the

co-defendants when the police arrested them for no reason. He testified that the police recovered the brown paper bag from defendant Higginbottom when they strip-searched him at the police station.

Sergeant Lisa King was qualified as an expert in the area of use, abuse and distribution of cocaine. She was permitted to testify as a rebuttal witness notwithstanding the objection of counsel.

Sergeant King was asked to examine the brown bag with the writing, the packets containing cocaine and the seizure analysis. She testified that in her opinion each packet would have a street value of $10.00 and the total value of the 40 packets would be $400.00.

Sergeant King was asked, based on the evidence in the case, if she had an opinion as to whether the drugs which were found on defendant Higginbottom were for personal use or for sale. Sergeant King stated that it was her opinion that the drugs were held for sale and not personal use. She based her opinion on the street value of the drugs which she stated was $400.00, the quantity and packaging of the drugs and the fact that the brown bag had writing on it which was consistent with a person keeping a tally of sales made.

Trial Court Opinion at 2–6.

On May 12, 1994, the Commonwealth filed a petition seeking the forfeiture of the $252.00 in United States currency that was seized from appellant at the time of his arrest. When appellant failed to oppose the forfeiture of the money seized, the Commonwealth's petition was granted on August 4, 1994. Subsequently, appellant was brought to trial on the criminal charges that are the subject of the instant appeal. Upon being convicted and sentenced, appellant asserted in his post-sentence motions that his criminal trial should have been barred on double jeopardy grounds because of the prior civil forfeiture action. As such, appellant contends that the judgment of sentence should be reversed and he should be discharged. We disagree.

■ In the first place, appellant has waived any double jeopardy challenge by having failed to file a pre-trial motion to dismiss the criminal charges against him on grounds that he had previously been placed in jeopardy via the civil forfeiture action. "Usually, the issue of double jeopardy should be raised in pretrial motions." *Commonwealth v. Johnson*, 319 Pa.Super. 463, 472, 466 A.2d 636, 641 (1983). The failure to file a pre-trial motion to dismiss a prosecution on grounds of double jeopardy, therefore, will result in the waiver of this argument on appeal. See: *Commonwealth v. Gilman*, 485 Pa. 145, 151, 401 A.2d 335, 338 (1979); *Commonwealth v. Peters*, 473 Pa. 72, 75, 373 A.2d 1055, 1057 (1977); *Commonwealth v. Perillo*, 426 Pa.Super. 1, 12 n. 6, 626 A.2d 163, 168 n. 6 (1993).

■ Moreover and in any event, appellant's assertion that his criminal trial was held in violation of principles of double jeopardy is without substantive merit. It is appellant's contention that the prior forfeiture of the $252.00 seized by police at the time of his arrest constituted a punishment for purposes of double jeopardy. Therefore, appellant argues, when he was sentenced upon his criminal conviction of drug offenses, he was subjected to multiple punishments for the same criminal conduct in violation of constitutional principles of double jeopardy.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution "prohibits the Commonwealth from punishing an accused twice for the same offense." *Commonwealth v. Owens*, 437 Pa.Super. 64, 80, 649 A.2d 129, 137 (1994), citing *Commonwealth v. Walker*, 468 Pa. 323, 331, 362 A.2d 227, 231 (1976). See: *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 665 (1969). In *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the United States Supreme Court considered the question of "whether and under what circumstances a civil penalty may constitute punishment for the purpose of the Double Jeopardy Clause." *Id.* at 446, 109 S.Ct. at 1901, 104 L.Ed.2d at 500–501. The *Halper* Court concluded as follows:

In making this assessment, the labels "criminal" and "civil" are not of paramount importance. It is commonly

understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties. Ibid. The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads. Cf. *Hicks v. Feiock*, 485 U.S. 624, 631, 108 S.Ct. 1423, 1429, 99 L.Ed.2d 721 (1988) ("[T]he labels affixed either to the proceeding or to the relief imposed . . . are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law"). To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

These goals are familiar. We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence. See, e.g., *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168, 83 S.Ct. 554, 567, 9 L.Ed.2d 644 (1963) (these are the "traditional aims of punishment"). Furthermore, "[r]etribution and deterrence are not legitimate nonpunitive governmental objectives." *Bell v. Wolfish*, 441 U.S. 520, 539, n. 20, 99 S.Ct. 1861, 1874, n. 20, 60 L.Ed.2d 447 (1979). From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. Cf. *Mendoza–Martinez*, 372 U.S., at 169, 83 S.Ct., at 568 (whether sanction appears excessive in relation to its nonpunitive purpose is relevant to determination whether sanction is civil or criminal). We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal

prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

*United States v. Halper, supra* at 447–449, 109 S.Ct. at 1901–1902, 104 L.Ed.2d at 501–502 (footnote omitted). A civil penalty, moreover, becomes a punishment for double jeopardy purposes when it "bears no rational relation to the goal of compensating the Government for its loss...." *Id.* at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

Subsequent to its decision in *Halper*, the Supreme Court held, in *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), that forfeitures of conveyances and real property under the Controlled Substances Act, 21 U.S.C. §§ 881(a)(4) and (a)(7), constituted punishment and were, thus, subject to the Eighth Amendment's Excessive Fines Clause. See also: *United States v. Ursery*, 59 F.3d 568 (6th Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996) (forfeiture of real property constituted punishment for purposes of Double Jeopardy Clause). Similarly, in *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the Supreme Court held that a tax imposed upon illegal drugs, after the taxpayer had already been punished criminally and was no longer in possession of the contraband, constituted a second punishment in violation of the Double Jeopardy Clause. The Court reasoned that the high rate of the tax and its deterrent purpose, along with the fact that the tax was conditioned upon the commission of a crime and imposed after the destruction of the taxed goods, set it apart from other revenue raising measures and transformed the tax into a punishment for double jeopardy purposes. *Id.* at ——, 114 S.Ct. at 1946–1948, 128 L.Ed.2d at 779–781.

At issue in the instant case, however, is the forfeiture of money which was directly derived from the sale of illegal drugs. With respect thereto, the United States Court of Appeals for the Fifth Circuit has declared:

The forfeiture of proceeds of illegal drug sales serves the wholly remedial purposes of reimbursing the government for the costs of detection, investigation, and prosecution of drug traffickers and reimbursing society for the costs of combatting the allure of illegal drugs, caring for the victims of the criminal trade when preventative efforts prove unsuccessful, most productivity, etc. *See One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972) (stating that forfeiture of property under the customs laws serves remedial purpose by "provid[ing] a reasonable form of liquidated damages for violation of the inspection provisions [by] ... reimburs[ing] the Government for investigation and enforcement expenses"); *Halper*, 490 U.S. at 444, 109 S.Ct. at 1900 (stating that costs of detection and investigation are remedial in nature); *Rex Trailer Co. v. United States*, 350 U.S. 148, 153–54, 76 S.Ct. 219, 222 & n. 6, 100 L.Ed. 149 (1956) (recognizing market and societal costs resulting from wrongdoing and avoidance of unjust enrichment as remedial purposes); *Ward*, 448 U.S. at 254, 100 S.Ct. at 2644 (recognizing repayment of damages to society as remedial).

.        .        .        .        .

The Supreme Court's recent opinion in *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), does not affect our holding today. *Austin*, 509 U.S. at 604–606, 113 S.Ct. at 2803, dealt with whether forfeitures under §§ 881(a)(4)—conveyances, or means of transporting drugs such as automobiles—and (a)(7)—real estate used in drug transactions—constituted punishment under the Excessive Fines Clause. In distinguishing the civil forfeiture in *One Lot Emerald Cut Stones*, 409 U.S. at 237, 93 S.Ct. at 493—a double jeopardy case in which a forfeiture was held not to constitute punishment—the *Austin* Court, 509 U.S. at 619–22, 113 S.Ct. at 2811–12, stated that the forfeitures of conveyances and real estate have no correlation to, or proportionality with, the costs incurred by the government and society because of the large and unpredictable variances in the values of real estate and conveyances in comparison

to the harm inflicted upon government and society by the criminal act. Unlike the real estate forfeiture statute that can result in the confiscation of the most modest mobile home or the stateliest mansion, the forfeiture of drug proceeds will always be directly proportional to the amount of drugs sold. The more drugs sold, the more proceeds that will be forfeited. As we have held, these proceeds are roughly proportional to the harm inflicted upon government and society by the drug sale. Thus, the logic of *Austin* is inapplicable to § 881(a)(6)—the forfeiture of drug proceeds.

*United States v. Tilley,* 18 F.3d 295, 299–300 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994).

In considering the same issue, the United States Court of Appeals for the Third Circuit concluded as follows:

In *United States v. Tilley,* 18 F.3d 295 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 574, 130 L.Ed.2d 490 (1994), the Fifth Circuit held that forfeiture of illegal drug proceeds under § 881(a)(6) is not "punishment." Applying the test of *Halper*—whether the amount forfeited was so great that it bore "no rational relation to the costs incurred by government and society from the defendant's criminal conduct," *id.* at 298–99, and citing national statistics on revenues produced and costs imposed by illegal drug activities, the court held that the amounts confiscated in that case were not grossly disproportionate to governmental and societal costs. *Id.* at 299. The court distinguished *Austin,* reasoning that the concerns about forfeitures of conveyances and real estate under §§ 881(a)(4) and (a)(7), i.e., that they could be wildly disproportionate to the costs imposed by the defendant's illegal activities, were not applicable to forfeitures of proceeds under § 881(a)(6). "[T]he forfeiture of drug proceeds will always be directly proportional to the amount of drugs sold. The more drugs sold, the more proceeds that will be forfeited. As we have held, these proceeds are roughly proportional to the harm inflicted upon government and society by the drug sale." *Id.* at 300.

Alternatively, the court held, even without the "rational relation" test of *Halper*, forfeiture of illegal drug proceeds is not "punishment" because of their very nature as illegally derived property. "When ... the property taken by the government was not derived from lawful activities, the forfeiting party loses nothing to which the law ever entitled him.... The possessor of proceeds from illegal drug sales never invested honest labor or other lawfully derived property to obtain the subsequently forfeited proceeds. Consequently, he has no reasonable expectation that the law will protect, condone, or even allow, his continued possession of such proceeds because they have their very genesis in illegal activity." *Tilley*, 18 F.3d at 300.

We find the Fifth Circuit's reasoning to be sound. We therefore hold that the forfeiture under 21 U.S.C. § 881(a)(6) of proceeds from illegal drug transactions, or proceeds traceable to such transactions, does not constitute "punishment" within the meaning of the Double Jeopardy Clause.

*United States v. $184,505.01 In U.S. Currency*, 72 F.3d 1160, 1168–1169 (3d Cir.1995). See also: *United States v. Ogbuehi*, 897 F.Supp. 887, 891–893 (E.D.Pa.1995). But see: *United States v. $405,089.23 In U.S. Currency*, 33 F.3d 1210, 1218–1222 (9th Cir.1994), *modified*, 56 F.3d 41, *cert. granted sub nom. U.S. v. Ursery*, —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996). Cf. *Austin v. United States, supra* at 621, 113 S.Ct. at 2811, 125 L.Ed.2d at 504–505 (Recognizing "that the forfeiture of contraband itself may be characterized as remedial [rather than punitive] because it removes dangerous or illegal items from society.").

Accordingly, upon careful review of the pertinent case law, we are persuaded that the forfeiture of proceeds that are directly traceable to the sale of illegal drugs is a remedial measure and does not constitute a punishment for purposes of double jeopardy. Our holding in this regard is fully consistent with the remedial purposes of Pennsylvania's Forfeiture Act, 42 Pa.C.S. § 6801 et seq., "of depriving the defendant of the means to commit additional offenses and [ ] help[ing] the state

defray the costs of investigation and prosecution." *Commonwealth v. Wingait Farms*, 659 A.2d 584, 591 (Pa.Cmwlth.1995), *alloc. granted*, 542 Pa. 676, 668 A.2d 1137 (1995). Therefore, because the forfeiture of the $252.00 that appellant derived from the illegal sale of drugs was remedial, and not punitive in nature, the prior forfeiture proceeding did not bar appellant's subsequent criminal prosecution for offenses arising from the same drug transaction. The judgment of sentence imposed following appellant's criminal conviction was a first, not a second, imposition of punishment, and, as such, was not violative of the Double Jeopardy Clause.

Other issues are raised in this appeal which are treated in a memorandum filed in conjunction with this opinion. Since we find no merit to any of the appellant's issues, we affirm the judgment of sentence.