**COMMONWEALTH of Pennsylvania**

v.

**David S. KLINE, Appellant.**

Superior Court of Pennsylvania.

Submitted March 10, 1997.

Filed June 19, 1997.

---

Wayne E. Bradburn, Jr., Asst. Public Defender, Bellefonte, for appellant.

J. Karen Arnold, Asst. Dist. Atty., Bellefonte, for Com., appellee.

Before KELLY, SAYLOR and HESTER, JJ.

HESTER, Judge:

David S. Kline appeals from the April 2, 1996 judgment of sentence imposed by the Centre County Court of Common Pleas following his plea of guilty to simple assault. Appellant maintains the sentencing court violated the ex post facto clause of the United States Constitution by imposing restitution under the revisions to 18 Pa.C.S. § 1106 which allow an award of restitution in favor of an insurance company. We conclude that restitution is not punishment within the meaning of the ex post facto clause. Therefore, we affirm the restitution award even though the permissible amount was increased by the statutory revisions.

On April 8, 1995, appellant assaulted Craig Allen Knepp, punching his victim approximately fifteen times. As a result of the attack, the teenager sustained fractured facial bones, broken teeth, and cuts. Appellant was charged with aggravated assault and simple assault, and on August 7, 1995, he pled guilty to simple assault. On April 2, 1996, appellant was sentenced to six to twenty-three and one-half months imprisonment. He also was ordered to pay $330.00 in restitution to Sharon Goss, the victim's mother, and $714.50 in restitution to Geisinger Health Plan, the victim's insurer. This appeal followed.

On April 8, 1995, the day appellant assaulted Craig Knepp, restitution for injuries to person or property was controlled by the version of 18 Pa.C.S. § 1106 effective August 17, 1976. At that time, subsection (h) of section 1106 defined victim as "[a]ny person, except an offender, who suffered injuries to his person or property as a direct result of the crime."

The statutory definition of victim had been subject to various interpretations. *See Commonwealth v. Runion,* 541 Pa. 202, 662 A.2d 617 (1995). However, it had been clearly held that restitution could not be awarded under that definition to an insurance company which insured against the loss suffered by the direct victim of the crime. *Commonwealth v. Galloway,* 302 Pa.Super. 145, 448 A.2d 568 (1982). In *Galloway,* we vacated an order awarding restitution to an insurance company which paid for damages caused by an arson. We reasoned that the insurance company was not a victim since its payment under the insurance policy was not a loss but a contractual obligation. *See also Commonwealth v. Anderson,* 394 Pa.Super. 299, 575 A.2d 639 (1990)(individuals contributing to "Crime Stoppers" are not victims under 18 Pa.C.S. § 1106); *Commonwealth v. Balisteri,* 329 Pa.Super. 148, 478 A.2d 5 (1984)(restitution can be awarded only to direct victim and not someone who shouldered financial loss in connection with the crime); *Commonwealth v. Mathis,* 317 Pa.Super. 362, 464 A.2d 362 (1983)(restitution award vacated to the extent it awarded restitution to insurance companies). *But see Commonwealth v. Layhue,* 455 Pa.Super. 89, 687 A.2d 382 (1996) (*Galloway* distinguished and restitution award to insurer upheld where crime involved charges that defendant committed arson to defraud insurer and collect insurance proceeds); *Commonwealth v. Kerr,* 298 Pa.Super. 257, 444 A.2d 758 (1982)(we affirmed award of restitution to owner of property in the full amount of value of property taken and damaged in theft even though restitution award included amounts for which victim already had received compensation by insurer).

Effective July 1, 1995, the legislature expanded the definition of victim as follows: "The term [victim] includes the Crime Victim's Compensation Fund if compensation has been paid by the Crime Victim's Compensation Fund to the victim and any insurance company that has compensated the victim for loss under an insurance contract." Thus, it is clear that the amendment increased the amount of restitution that was allowed to be awarded in this case. Appellant maintains that due to the ex post facto

clause, the sentencing court lacked authority to award restitution to the insurer under the statutory revisions.

 Article I, § 10 of the United States Constitution provides that "[n]o State shall ... pass any ... ex post facto Law." The Supreme Court recently revisited this clause as it relates to a state law which had the effect of increasing punishment applicable to crimes committed before enactment of the law. The clause unquestionably prohibits such action:

> "The constitutional prohibition and the judicial interpretation of it rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission, should not be altered by legislative enactment, after the fact, to the disadvantage of the accused." [*Beazell v. Ohio,* 269 U.S.] 167, 170, 46 S.Ct. 68, 69, 70 L.Ed. 216 [1925].

The bulk of our *ex post facto* jurisprudence has involved claims that a law has inflicted a "a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull,* 3 Dall. 386, 390, 1 L.Ed. 648 (1798). We have explained that such laws implicate the central concerns of the *Ex Post Facto* Clause: "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver v. Graham,* 450 U.S. 24, 30, 101 S.Ct. 960, 965, 67 L.Ed.2d 17 (1981).

To fall within the *ex post facto* prohibition, a law must be retrospective—that is "it must apply to events occurring before its enactment"—and it "must disadvantage the offender affected by it" *id.,* [450 U.S. 24] at 29, 101 S.Ct. 960, [at 964] 67 L.Ed.2d 17, by altering the definition of criminal conduct or increasing the punishment for the crime, see *Collins v. Youngblood,* 497 U.S. 37, 50, 110 S.Ct. 2715 [2723, 111 L.Ed.2d 30] (1990).

*Lynce v. Mathis,* —— U.S. —— – ——, 117 S.Ct. 891, 892, 137 L.Ed.2d 63, 71–71 (1997). However, "[t]he Constitution's explicit prohibition against ex post facto laws applies only to those laws that inflict *criminal punishment. United States Trust Co. of New York v. New Jersey,* 431 U.S. 1, 17 n. 13, 97 S.Ct. 1505, 1515 n. 13, 52 L.Ed.2d 92 (1977)." *United States v. Hampshire,* 95 F.3d 999, 1006 (10th Cir.1996)(emphasis added).

Thus, we must determine whether restitution is "punishment" within the meaning of the ex post facto clause in order to determine the merits of appellant's claim. The Supreme Court has considered what constitutes "punishment" in various Constitutional contexts. In the leading case of *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Court decided under what circumstances a civil penalty could constitute punishment for purposes of the double jeopardy clause. *Halper* has been applied routinely in determining whether a sanction is punishment in other contexts and also, specifically for purposes of the ex post facto clause. *See Taylor v. Rhode Island,* 101 F.3d 780 (1st Cir.1996).

 In *Halper,* the Court gave us the following standards in evaluating whether a monetary sanction can be considered punishment:

> In making this assessment, the labels "criminal" and "civil" are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties. .... The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads. Cf. *Hicks v. Feiock,* 485 U.S. 624, 631, 108 S.Ct. 1423, [1429] 99 L.Ed.2d 721 (1988) ("The labels affixed either to the proceeding or to the relief imposed are not controlling and will not be allowed to defeat constitutional law"). To

that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

These goals are familiar. We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence. See, e.g., *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168, 83 S.Ct. 554, [567–68] 9 L.Ed.2d 644 (1983) (these are the "traditional aims of punishment"). Furthermore, "retribution and deterrence are not legitimate non-punitive governmental objectives." *Bell v. Wolfish,* 441 U.S. 520, 539, n. 20, 99 S.Ct. 1861, [1874, n. 20] 60 L.Ed.2d 447 (1979). From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term. Cf. *Mendoza–Martinez,* 372 U.S., at 169, 83 S.Ct. 554, [at 568] 9 L.Ed.2d 644 (whether sanction appears excessive in relation to its non-punitive purpose is relevant to determination whether sanction is civil or criminal). We therefore hold that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

*United States v. Halper, supra,* 490 U.S. at 447–49, 109 S.Ct. at 1901–02, 104 L.Ed.2d at 501–02. Under *Halper,* a monetary sanction, whether criminal or civil, is punishment for double jeopardy purposes if its primary goal is punitive rather than remedial. Further, a goal will be considered punitive under *Halper* if it bears no reasonable relation to its stated non-punitive goal, for example, of compensating the government for its loss. *See also Commonwealth v. Higginbottom,* 451 Pa.Super. 81, 678 A.2d 408 (1996).

In *Halper,* the Court ruled that a civil fine imposed on a defendant who had submitted inflated Medicare claims was punishment for double jeopardy purposes. It relied upon the fact that the size of fine imposed was 220 times larger than the actual loss suffered by the United States Government as a result of the Medicare fraud. The *Halper* Court concluded that the fine was so extreme and divorced from actual damages that it constituted punishment.

Similarly, in *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the Court ruled that a state tax levied on confiscated illegal drugs constituted punishment for double jeopardy purposes. Again, the Court reiterated that it is irrelevant whether the sanction is imposed in a criminal or civil setting. In determining that the tax primarily was penal in nature, the Court looked to the facts that the tax was outrageously high, was imposed only after a crime was committed and the taxpayer arrested, and was imposed on goods no longer owned by the taxpayer. Based on these factors, the Court determined that the purpose of the tax was to punish rather than raise revenue and therefore, was subject to double jeopardy prohibitions.

More recently, the Supreme Court has examined whether an *in rem* forfeiture proceeding is punishment for double jeopardy purposes. *United States v. Ursery,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).[1] The Court stated that in making this determination, two stages are used. First, the courts must look to the legislature's intent in enacting the provisions to determine if the intent primarily was remedial or punitive. Second, the courts must determine whether the sanction is so punitive in fact that it cannot legitimately be viewed as non-punitive in nature. *See also Bell v. Wolfish,* 441 U.S.

---

1. In *Ursery,* another Supreme Court case deciding whether a civil sanction was punishment, *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), was limited expressly to the context in which the case was decided. *Austin* concerned whether a civil forfeiture was punishment under the excessive fines clause of the eighth amendment.

520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)(among factors relevant in determining whether a sanction is punishment for purposes of the fifth amendment is whether it promotes the traditional purpose of punishment, retribution and deterrence, and whether it is excessive in relation to the non-punitive purpose assigned to it).

The *Ursery* Court also noted that the sanction can have punitive aspects and still not constitute punishment as long as the sanction serves significant non-punitive goals. In ruling that *in rem* forfeiture actions are not punishment for double jeopardy purposes, the Court observed that the primary purposes of such actions are to confiscate property used in violation of the law, to ensure that criminals do not profit from their acts, and to encourage property owners to oversee their property and prevent criminal actions from occurring thereon. It noted that the proceedings were civil in nature, being against the property itself rather than the defendant. It opined that even though the forfeiture statute had a deterrent effect, which was punitive in nature, this fact could not override the primarily remedial, valid, and non-punitive goals of the forfeiture statute. *See also Commonwealth v. Trayer*, 452 Pa.Super. 1, 680 A.2d 1166 (1996) (forfeiture proceedings not punishment under double jeopardy clause since primary purpose is to deprive the defendant of the investigation and prosecution).

■ We now apply the reasoning of these cases to determine if restitution is punishment. The case which most comprehensively discusses the goals of restitution is *Commonwealth v. Fuqua*, 267 Pa.Super. 504, 407 A.2d 24, 25–26 (1979)(footnotes omitted):

> An order of restitution or reparation imposed either as a direct sentence or as a condition of probation constitutes a "constructive tool in the criminal justice jurisprudence." *State v. Garner*, 115 Ariz. 579, 566 P.2d [1055] 1057 (1977); *see* Schafer, *Restitution to Victims of Crime—An Old Correctional Aim Modernized*, 50 Minn. L.Rev. 243 (1965). Such sentences are to be encouraged as they constitute "an aid both to the criminal in achieving rehabilitation and to his victim in obtaining some

measure of redress." *Commonwealth v. Walton*, 483 Pa. 588, 599, 397 A.2d 1179, 1185 (1979); *see State v. Harris*, 70 N.J. 586, 362 A.2d 32 (1976); Annotation, *Propriety of Condition of Probation Which Requires Defendant Convicted of Crime of Violence to Make Reparation to Injured Victim*, 79 A.L.R.3d 976 (1977). As a sentence, or a condition of sentence, imposed following a criminal conviction, an order of restitution is not an award of damages. *See generally* Rothstein, *How the Uniform Crime Victims Reparation Act Works*, 60 ABA J. 1531 (1974). While the other aids the victim, its true purpose, and the reason for its imposition, is the rehabilitative goal it serves by "impressing upon the offender the loss he has caused and his responsibility to repair that loss as far as it is possible to do so." *State v. Stalheim*, 275 Or. 683, 689, 552 P.2d 829, 832 (1976); *see State v. Mottola*, 84 N.M. 414, 504 P.2d 22 (1972). Thus a court's concern that the victim be fully compensated should not overshadow its primary duty to promote the rehabilitation of the defendant. *See* Best & Birzon, *Conditions of Probation; An Analysis*, 51 Geo.L.J. 809 (1963); Merceret, *Sentencing Alternatives to Fine & Imprisonment*, 31 U.Miami L.Rev. 387 (1977).

Thus, restitution is viewed as serving two goals. First, it compensates the victim of the crime for his loss. Second, "[T]he primary purpose of restitution is rehabilitation of the offender by impressing upon him that his criminal conduct caused the victim's loss or personal injury and that it is his responsibly to repair the loss or injury as far as possible." *Commonwealth v. Runion, supra*, 541 Pa. at 205, 662 A.2d at 618; *accord Commonwealth v. Walton*, 483 Pa. 588, 397 A.2d 1179 (1979)(restitution is designed to help both the criminal in rehabilitating himself and the victim in obtaining some redress for the crime); *Commonwealth v. Yanoff*, 456 Pa.Super. 222, 690 A.2d 260, 266 (1997) (citation and emphasis omitted)("By ordering a defendant to pay restitution, a trial court serves two purposes. Specifically, while the payments may compensate the victim, the sentence is also meant to rehabilitate the defendant by instilling in her mind that it is her responsibility to

compensate the victim.") *See also Commonwealth v. Genovese,* 450 Pa.Super. 105, 675 A.2d 331 (1996) (restitution, although penal in nature, is an equitable remedy whereby the person injured is restored to his original position prior to the loss or injury). *But see Commonwealth v. Harner,* 533 Pa. 14, 617 A.2d 702 (1992)(statute allowing award of restitution, being penal in nature, must be strictly construed).

Thus, while restitution is acknowledged to have a deterrent and penal effect, *Commonwealth v. Genovese, supra,* it is clear that its primary purposes are completely remedial: compensation to the victim for loss occasioned by the crime and rehabilitation of the defendant. An award of restitution cannot be viewed as primarily fulfilling either of the traditional goals of punishment, deterrence and retribution. Furthermore, the amount of restitution awarded under the statute is rationally related to the loss caused by the defendant's criminal actions. The statute allows restitution only for "compensation for the loss." 18 Pa.C.S. § 1106(c)(1)(i). Since restitution is not punishment under the ex post facto clause, the sentencing scheme herein is not infirm.

This holding is in accord with federal circuit cases on the issue. In *Taylor v. Rhode Island, supra,* the defendant was assessed a monthly civil offender's fee while he was on parole. The amount of the monthly fee was increased after defendant's crime was committed. The court in *Taylor* noted that the fee expressly was designed to reimburse the state for costs directly associated with providing goods and services to supervise probationers and parolees and that the fees went into a separate fund used to defray only those costs. The court concluded that the reasonable fee, directly related to costs, could not be viewed as primarily having a deterrent or retributive intent and that the amount of the fee was rationally related to the costs. Thus, the court held that the fee was not punishment under the test announced in *Halper,* that the ex post facto clause did not apply, and that appellant could be required to pay the increased fee. *Accord United States v. Hampshire,* 95 F.3d 999, 1006 (10th Cir.1996)(Defendant's "restitution order [did] not implicate the Ex Post Facto Clause because it [did] not inflict punishment upon him but rather [sought] to compensate his child for his failure to pay his past due support obligation.")

Similarly, the court in *United States v. Monsanto Co.,* 858 F.2d 160 (4th Cir.1988), discussed the ex post facto clause in connection with the imposition of environmental clean-up costs on people generating hazardous waste. In that case, defendants were held liable for the costs of removal of hazardous waste from a disposal facility. The federal and state governments were awarded nearly two million dollars. The defendants were sued under a federal act that enabled recovery of the clean-up costs even though the waste was deposited prior to passage of the act. The fourth circuit concluded that the clean-up costs were not punishment for purposes of the ex post facto clause despite the fact that the act imposed liability on pre-enactment disposal activities of waste generators. The court concluded that the act did not exact punishment because the restitution of those costs was not intended to operate primarily as a criminal penalty or punitive deterrent but rather to reimburse the governments for costs incurred directly by them to clean up waste sites.

Judgment of sentence affirmed.