### 40869. McMILLAN v. THE STATE.
(322 SE2d 278)

CLARKE, Justice.

Tony McMillan was indicted in Jenkins County along with James McMillan, Kevin McMillan and Sharon McMillan Bassett for the murder of Curtis Bassett, Sharon's husband. He was tried separately before a jury, convicted of malice murder and sentenced to life in prison. He raises errors involving the sufficiency of the evidence, the conduct of the trial judge, the quashing of his subpoenaes and the charge. We find it necessary to reverse based upon language used when recharging the deadlocked jury.

Sharon and Curtis Bassett lived in Millen, Georgia. The state's evidence showed that a burglary occurred in June of 1982 at the residence of neighbors of the Bassetts; many identifiable household items were taken. In July of 1982 Sharon left her husband and went with appellant to Newnan, Georgia, where they lived with her father, James McMillan, and brother, Kevin McMillan. They drove to Newnan in a U-Haul truck loaded with their possessions. Although appellant's surname is also McMillan, he is not related to them.

Mr. Bassett wrote to his wife and telephoned to convince her to return home. He then drove to the Newnan residence to talk to his wife. While at the home he observed personal property matching that stolen from his neighbor in Millen. Mr. Bassett communicated this information to law enforcement officials which led to the arrest of James and Kevin McMillan, Sharon Bassett, and the appellant in September of 1982. All were released on bond. They then learned that Mr. Bassett had informed on them.

Witnesses for the state testified that appellant and James McMillan had made statements to the effect that they would get even

with Bassett. Kevin McMillan was a state witness. The first week in October he accompanied appellant to two pawn shops looking for a .22 caliber rifle. James McMillan and the appellant went to a discount store in Newnan on October 7, 1982. Through expert handwriting evidence it was shown that James purchased a semi-automatic Martin Glenfield .22 caliber rifle using a stolen credit card and identification. He also purchased Federal brand .22 caliber ammunition.

Kevin testified that on the eighth of October James and the appellant were attempting to make a silencer for the gun using copper tubing. They took the tubing to a hardware store where an employee assisted them in straightening the tube. Metal washers were also purchased.

James worked at a restaurant in Newnan which was operated by a cousin. On Monday, October 11th he borrowed his cousin's car stating that his car needed work and appellant was going to fix it. A restaurant employee testified that she last saw James between 6:00 and 6:30 that evening and that when he drove away he said he and appellant had something to do. The distance between Millen and Newnan is approximately 190 miles.

Mr. Bassett operated a convenience store in Millen. Store employee Frank Herrington testified that he relieved Bassett at the store at 11:00 p.m. on October 11th. Herrington attempted to call Bassett around 12:30 a.m. to inquire about a delivery of groceries but got no answer. When he got no answer at 6:30 a.m., he called Bassett's mother-in-law's residence and Sharon's sister, Sonya McMillan, agreed to go check on him. She discovered his body and the authorities were notified.

Bassett was fully clothed on the utility room floor. No money was found on his body although there was evidence he had around $700 in cash when he left the store. There was a partially eaten meal in the kitchen. Spent .22 Federal brand cartridges were found in the house as well as a small metal washer. Drawers had been pulled open and marijuana was scattered in the bottom of a wardrobe.

Bassett died from multiple gunshot wounds; nine bullets were removed from the body. The crime lab expert testified that all were .22 caliber bullets fired from the same weapon. The bullets were identified as being fired from a rifle manufactured by the Marlin Company.

The murder weapon was never found. Kevin testified that when he questioned appellant about the gun the appellant stated he had gotten "rid of it" and that they would "have to look through a bunch of water to find it."

Appellant was seen in Newnan at 8:00 a.m. on October 12. There was testimony about a farmhouse on property owned by the McMillan family on the Sylvania highway around Millen. A witness who lived near the farm testified that someone drove to the house and

stayed for about 15 minutes on October 12 between the hours of 2:00 a.m. and 3:00 a.m.

Appellant made statements to the police in which he denied participation in the burglary and in the death of Mr. Bassett. He stated that he transported household goods from the Bassett home in Millen for Sharon but did not know any of the property was stolen. Initially he denied going to the hardware store with the copper tubing. He later admitted this trip but said he needed to straighten the tube to work on a washing machine.

1. The appellant contends the evidence is insufficient to support a judgment of guilt, and that the verdict is unsupported by the evidence and is contrary to principles of justice.

Under the test in Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), a conviction is authorized by the evidence if a rational trier of fact could have found guilt beyond a reasonable doubt. We hold that the evidence, though circumstantial, is sufficient to sustain the verdict.

2. The appellant complains of the omission of an exculpatory statement and the admission of other statements. The exculpatory evidence is alleged to be statements made by appellant to GBI officers during a polygraph examination. It is argued that the state did not produce the statement pursuant to a pre-trial request under OCGA § 17-7-210. The statute provides that if the state does not comply with the statute, the statement cannot be admitted into evidence. The statement was the result of a polygraph exam whose admissibility at trial was not stipulated and, therefore, it was inadmissible under State v. Chambers, 240 Ga. 76 (239 SE2d 324) (1977). Since the statement was inadmissible, there was no harm in failing to produce it.

As to the other statements of appellant which were admitted, we find no error in the court's ruling on voluntariness under Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

3. We do not address the appellant's contentions that the conduct of the trial judge during the trial was on many occasions improper and so prejudicial that a fair trial was impossible because our holding in Division 4 requires a retrial and the alleged errors are not likely to recur.

4. Appellant further contends that the court made coercive and prejudicial remarks in recharging the jury upon their report that they were deadlocked.

Deliberations began at approximately 2:00 p.m. At 7:00 the jury was brought into court and announced they could not reach a decision and were deadlocked at 9 to 3. When asked if a verdict could be reached the foreman replied "No sir. I don't think so." The judge then instructed them to continue to deliberate. The appellant argues it was improper for the judge to state "These cases are tried at con-

siderable trouble to the county and expense to the county . . ." He also contends the court improperly commented on the guilt of the accused by saying "I feel like there is enough evidence in this case for you to reach a verdict one way or the other." At 7:30 p.m. the jury had not reached a verdict and was dispersed for the evening. The judge told them to report back to deliberate the next morning (Friday) and to cancel any plans they may have for Saturday. On Friday they deliberated from 9:00 a.m. to 11:00 a.m. at which time they announced a verdict of guilty.

This court has approved the use of the "Allen charge," see *Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896), in which a deadlocked jury is instructed to listen to the arguments of others, to consider the opinions of the majority and reminded that absolute certainty is not required. *Anderson v. State*, 247 Ga. 397 (276 SE2d 603) (1981). We have held that instructing a jury that failure to agree would cause a mistrial resulting in another trial by another jury is not unduly coercive. *Hardy v. State*, 242 Ga. 702 (251 SE2d 289) (1978).

The issue in reviewing such charge is whether the instruction is coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors. In *Riggins v. State*, 226 Ga. 381 (174 SE2d 908) (1970), we held a charge to be coercive when the judge remarked that someone is being "stubborn" and that a trial was an "expensive operation." In *Sanders v. State*, 162 Ga. App. 175 (290 SE2d 516) (1982), a retrial was ordered because the instruction informing the jury that "If you can't figure the puzzle out, you'll just have to stay in there until you do . . . so, if you will go back in and try to deliberate a little longer" is tantamount to urging a juror to surrender his conviction in order to reach a verdict. While the jury may be encouraged to deliberate and reconsider their positions, such encouragement must be free from coercion or from undue pressure by the court. *Moore v. State*, 222 Ga. 748 (152 SE2d 570) (1966).

We hold the cumulative effect of the comments during the Allen charge and in particular the statement by the court "I feel like there is enough evidence in this case for you to reach a verdict one way or another" requires reversal in this case. While we have held the evidence, though largely circumstantial, was sufficient to support a verdict of guilty, the only evidence before the jury was the state's evidence. Any personal expression of opinion by the trial court as to what has or has not been proved during the course of a trial is reversible error. *Garner v. Young*, 214 Ga. 109 (103 SE2d 302) (1958). Due to the circumstantial nature of the evidence and the difficulty of the jury in reaching a unanimous opinion we cannot say that the verdict is free from undue pressure.

5. The remaining enumerations of error in this appeal are found to be without merit or are unnecessary to reach in this grant of a new trial.

*Judgment reversed. All the Justices concur, except Smith, J., not participating.*

DECIDED NOVEMBER 16, 1984.

*Robert S. Lanier, Jr.,* for appellant.

*J. Lane Johnston, District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis,* for appellee.