## S98A0910. JONES v. THE STATE.
(505 SE2d 749)

BENHAM, Chief Justice.

This appeal is from Gerrod Oscar Jones's convictions of felony murder, possession of a firearm during commission of a crime, concealing the death of another, two counts of first degree forgery, and four counts of theft by taking.[1] The evidence presented at trial by the State showed that appellant Gerrod Jones and Teco Jones, appellant's girlfriend's cousin, were with the victim in the victim's car when Gerrod Jones, from the backseat, shot the victim twice, the second shot to the victim's head. Appellant and Teco Jones wrapped the victim in a blanket and dumped his body in woods where his skeletal remains were later recovered. Filling out and using withdrawal slips from the victim's car, they made two withdrawals from the victim's bank account after his death, used his car, and then took the stereo and items of personal property from his car. At trial, the State introduced a statement in which Gerrod Jones claimed that the first shot was accidental, but admitted that the shot to the victim's head was intentional. Teco Jones testified for the State, implicating Gerrod Jones, who testified in turn that it was Teco Jones who did the shooting and that his earlier confession was the product of coercion by Teco Jones's aunt (appellant's girlfriend's mother).

1. The evidence presented at trial and summarized above was sufficient to authorize a rational trier of fact to find Jones guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Sheppard v. State*, 267 Ga. 276 (1) (476 SE2d 760) (1996); *Waldrip v. State*, 267 Ga. 739 (482 SE2d 299) (1997); *Kaple v. State*, 265 Ga. 772 (462 SE2d 134) (1995); *Huewitt v. State*, 218 Ga. App. 566 (462 SE2d 463) (1995).

2. Pursuant to a challenge by the State, the trial court disallowed one of Jones's peremptory strikes and placed the stricken juror

---

[1] The crimes were committed on August 13, 1995, and Jones was indicted for malice murder, felony murder (aggravated assault), aggravated assault, possession of a firearm during commission of a crime, concealing the death of another, forgery in the first degree (two counts), and theft by taking (four counts) on November 25, 1995. At a trial conducted May 6-9, 1997, Jones was acquitted of malice murder, but was convicted of all other charges. The trial court sentenced Jones to life imprisonment for felony murder; merged the aggravated assault count into the felony murder count; sentenced him to five years, consecutive to the life sentence, for the firearm possession charge; sentenced him to twelve months for concealing a death, consecutive to the other sentences; and sentenced him to ten years each for the remaining counts, all to be served concurrent with each other and the other sentences. Jones's motion for new trial, filed June 4, 1997, and amended August 11, 1997, was denied on February 5, 1998. A notice of appeal filed February 9, 1998, directed this appeal to the Court of Appeals where the appeal was docketed on March 10, 1998. The Court of Appeals transferred the appeal to this Court by an order dated March 12, 1998. The appeal was docketed in this Court on March 16, 1998, and was submitted for decision on the briefs.

back on the jury. Jones complains on appeal that the trial court did not follow the correct procedure and incorrectly determined that the race-neutral reasons given for the challenged strike were pretextual.

The procedure to be followed by trial courts when such a challenge is made was set forth by this Court in *Chandler v. State*, 266 Ga. 509 (2) (467 SE2d 562) (1996):

> The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent. The "ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." [Cit.]

Contrary to Jones's contention, our review of the record shows that the trial court did follow the proper steps in considering the challenges. Following the State's challenge of two of the strikes, the trial court specifically noted that the pattern of the peremptory strikes used by the defense (using eight strikes to remove seven white males and one Asian male from the jury) established a prima facie case of discrimination. After the defense offered reasons for the challenged strikes, the trial court considered them, held that they were race-neutral, noted that the opponent of the strike had the burden of showing them to be pretextual, and asked the State to comment on the issue. After the State argued that the reasons were pretextual, the trial court rejected one of the State's challenges, but ruled that the other challenge was valid, finding specifically that the reason given for that strike was pretextual. Thus, since the trial court faithfully followed the procedure as outlined in *Chandler*, supra, we find no merit in Jones's argument based on procedure.

Jones also challenges the trial court's finding that the reason given for striking one juror was pretextual. The trial court's finding of fact that the strike was exercised in a purposefully discriminatory manner must be affirmed unless clearly erroneous. *Minor v. State*, 264 Ga. 195 (5) (442 SE2d 754) (1994). Here, the trial court stated that it had considered the record as a whole and had specifically considered defense counsel's explanation for the strike. In finding the reason for one strike to be pretextual, the trial court noted that one of the race-neutral reasons for exercising the successfully challenged strike was applied inconsistently by defense counsel, used as a basis for striking that juror, but not used to strike other similarly situated jurors. The trial court also took specific note that defense counsel, in justifying the use of the strike which was disallowed, explained

that he had made that choice because he assumed the State would make the next strike based on race, an assumption which proved unfounded. In light of counsel's admission that race played a role in that strike, we cannot say that the trial court's finding of purposeful discrimination was clearly erroneous. Accordingly, we find no error in the trial court's upholding of the State's challenge of one peremptory strike by the defense. Id.

3. Jones enumerates as error the trial court's refusal to permit him to impeach a defense witness by the use of misdemeanor convictions. Although the trial court permitted Jones to introduce felony convictions into evidence, it refused to permit the introduction of misdemeanor convictions. Even assuming for the purpose of argument that use of that method of impeachment against one's own witness would be permissible (but see *Paradise v. State*, 212 Ga. App. 166 (3) (441 SE2d 497) (1994) ("OCGA § 24-9-81 provides that the exclusive method by which a party may impeach his own witness is by proof of a 'previous contradictory statement.' ")), the trial court did not err in this case because Jones did not demonstrate that the witness was subject to impeachment. "A party may not impeach a witness voluntarily called by him, except where he can show to the court that he has been entrapped by said witness by a previous contradictory statement." OCGA § 24-9-81. Although this Court has removed the requirements of surprise and prejudice from the element of entrapment in the statute (*Davis v. State*, 249 Ga. 309 (3) (290 SE2d 273) (1982); *Wilson v. State*, 235 Ga. 470 (219 SE2d 756) (1975)), the statute's plain language still requires as a threshold matter a showing that the witness made a statement inconsistent with the witness's testimony at trial. Contrary to the statement in the special concurrence, Jones's examination of the witness did not satisfy the requirement for a prior inconsistent statement because the existence of such statement was not shown. Because no such showing was made in this case, Jones was not entitled to impeach the witness at all. The special concurrence's complaint that "relying on the statute's language to require a prior inconsistent statement as a prerequisite is contrary to modern trial practice" amounts to a suggestion that the legislature's pronouncement on the matter should be ignored entirely rather than merely being construed liberally. Until the legislature acts to modify the statute, it still establishes as a prerequisite for impeaching one's own witness a showing that the witness's testimony at trial is inconsistent with a previous statement of the witness. That showing was not made in this case and since Jones was not entitled to impeach the witness at all, there could be no error in limiting impeachment as the trial court did. Indeed, the trial court erred in permitting the introduction of the felony convictions in the absence of the statute's required showing, but that error was both induced by

Jones and not harmful to him.

4. Because the State did not rely solely on the testimony of an accomplice, the trial court did not err in failing to charge on the necessity of corroborating the testimony of an accomplice. *Jenkins v. State*, 268 Ga. 468 (9) (491 SE2d 54) (1997).

5. Jones's complaint regarding the adequacy of the trial court's instruction on affirmative defenses is foreclosed by the fact that the charge given was exactly as requested by Jones. *Simmons v. State*, 266 Ga. 223 (7a) (466 SE2d 205) (1996).

6. During deliberations, the jury asked the trial court a question regarding the consequences of a hung jury. In response, the trial court gave an *Allen* charge (*Allen v. United States*, 164 U. S. 492 (17 SC 154, 41 LE 528) (1896)), instructing the jury to continue deliberation and to examine their differences in a spirit of fairness and candor. When the jury announced the next day that it was deadlocked, the trial court again gave an *Allen* charge. Jones now contends that giving the charge twice was coercive and requires reversal under *McMillan v. State*, 253 Ga. 520 (322 SE2d 278) (1984). The charges given in this case, however, were not subject to the criticism which required reversal in *McMillan*: in neither iteration of the *Allen* charge in the present case did the trial court emphasize the expense to the county of trying the case or suggest that there was enough evidence before the jury to enable it to reach a verdict. Instead, the trial court in this case emphasized to the jurors that they should not give up their opinions in order to get along or just to reach an agreement. Here, as the Court of Appeals did in *Tyson v. State*, 217 Ga. App. 428 (1) (457 SE2d 690) (1995), where the trial court gave the *Allen* charge twice, we find no error in the trial court's repetition of a non-coercive *Allen* charge.[2]

7. Jones contends that the trial court's charge on reasonable doubt was incomplete because it did not conclude with the statement that it would be the jury's duty to acquit if the State failed to prove guilt beyond a reasonable doubt. The trial court's charge on reasonable doubt was thorough and included an admonition that the jury should acquit if it had any doubt. Under those circumstances, the omission of the specific sentence using the phrase, "duty to acquit," is no cause for reversal. *Beam v. State*, 265 Ga. 853 (6) (463 SE2d 347) (1995).

---

[2] We note that the dynamite charge has been criticized and has been rejected by the American Bar Association in its Standards of Criminal Justice in favor of an instruction regarding deliberation and deadlocks to be given during the main charge to the jury. Daniel, *Georgia Criminal Trial Practice*, § 24-24. See also *Loving v. State*, 947 SW2d 615, 619 (Tex. App. 1997): "Many courts believe an Allen charge is less coercive if submitted before a jury comes to an impasse in reaching a verdict and thus have expressed a preference for the trial court to give the charge before a jury deadlocks. [Cits.]"

8. The defense introduced a tape recording of police interrogation of Jones's girlfriend. At a point in the recording that the questions turned from the present case toward the possibility of the witness's mother's involvement in an unrelated and unsolved murder, the State objected on the ground of relevancy. The trial court listened to the challenged portion of the tape outside the presence of the jury and excluded that portion of the tape as irrelevant. Jones complains of that exclusion, contending the interrogation was relevant to his explanation for having confessed to the victim's murder, i.e., that he was coerced into doing so by his girlfriend's mother, whom he feared.

"[E]ven though our rule favors the admission of relevant evidence, the admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion." *O'Neal v. State*, 254 Ga. 1 (3) (325 SE2d 759) (1985). The excluded tape contained no evidence that the witness's mother committed any crimes, only rank hearsay in the form of questions and insinuations by the interrogating officers. That being so, the tape contained no evidence relevant to Jones's explanation or to any other issue in the case. We find no abuse of discretion in the trial court's relevancy ruling.

9. Finally, Jones complains that the trial court erroneously encouraged the jury to make its decision based on extraneous matters when it made the following comment as it prepared to release the jury for the evening: "Sometimes, when you have hard decisions to make, it's better to sleep on it and think about it and pray about it, and then come back in the morning, and you can put your head together again." We do not find the trial court's suggestion susceptible of Jones's interpretation. Nothing in the trial court's comment suggested that the jury's decision be based on anything other than the evidence. While the better practice would be to avoid reference from the bench to religious practices, the comment made by the trial court in this case did not invoke a deity or inject religion into the case, and we find no merit to Jones's contention of error. See *Pittman v. State*, 179 Ga. App. 760 (2) (b) (348 SE2d 107) (1986).

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., Sears and Hines, JJ., who concur specially, and Fletcher, P. J., Hunstein and Carley, JJ., who concur in the judgment only as to Division 9.*

FLETCHER, Presiding Justice, concurring specially.

I cannot agree with the majority's conclusion in Division 3 that Jones failed to demonstrate that a defense witness was subject to impeachment. In the present case, Jones called Regina Shields, the aunt of Teco Jones, to the stand. Jones' theory of the case was that

Teco Jones fired the fatal shots, Shields forged the withdrawal slips taken from the victim's car, she pressured Jones into taking the blame, and she told him not to implicate her or her family. On direct, Shields denied telling Jones to keep her family's name out of it. Therefore, I conclude that Jones satisfied the requirement for a prior inconsistent statement and that the trial court properly allowed her to be impeached with felony convictions for forging a stolen check and credit card fraud.

I further disagree with the majority's suggestions that a prior inconsistent statement is the sole method of impeachment and is always a prerequisite to impeaching one's own witness. Neither statement comports with the current recognition that the rule against impeaching one's own witness is to be liberally construed. OCGA § 24-9-81 states that a party may not impeach his own witness "except where he can show to the court that he has been entrapped by said witness by a previous contradictory statement." However, beginning in 1975 the courts of this state have recognized that the ends of justice are ill-served by a strict application of this statute and, therefore, have substantially liberalized it.[3] Thus, there is no longer any requirement that the testimony be affirmatively damaging[4] or that the party be "entrapped" or surprised by the testimony.[5] In keeping with this trend, I see no rational basis for construing OCGA § 24-9-81 to limit the form of impeachment to a prior inconsistent statement. The plain language of the statute addresses only *when* a party may impeach his own witness. Other statutes and case law dictate the proper *forms* of impeachment.[6] Furthermore, relying on the statute's language to require a prior inconsistent statement as a prerequisite is contrary to modern trial practice. It is a commonplace strategy, especially by the state in criminal cases, for a party to "impeach" its own witness with a prior conviction in order to soften the impact of cross-examination.[7]

For these reasons, I conclude that the trial court was correct in allowing Jones to impeach Shields with her felony convictions. In light of the felony convictions admitted, the exclusion of the misdemeanor convictions was harmless error, even assuming the misdemeanor convictions were for crimes of moral turpitude and therefore

---

[3] *Wilson v. State*, 235 Ga. 470, 474-475 (219 SE2d 756) (1975); *Jackson v. Ensley*, 168 Ga. App. 822, 825 (310 SE2d 707) (1983) ("It is now settled in this state that OCGA § 24-9-81 does not mean what it was formerly construed to mean [and] has been completely modified.").

[4] *Wilson*, 235 Ga. at 475.

[5] *Davis v. State*, 249 Ga. 309, 314 (290 SE2d 273) (1982).

[6] See William Daniel, *Georgia Handbook on Criminal Evidence*, §§ 6-19 through 6-23.

[7] Id., § 6-19 at 259.

permissible impeachment material.[8]

I am authorized to state that Justice Sears and Justice Hines join in this special concurrence.

DECIDED OCTOBER 5, 1998 —
RECONSIDERATION DENIED OCTOBER 23, 1998.

*C. Jackson Burch,* for appellant.

*Spencer Lawton, Jr., District Attorney, Michael K. Dennard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.

---

[8] *Caruth v. Brown,* 202 Ga. App. 656, 657 (415 SE2d 470) (1992).