## S06A0234. CUMMINGS v. THE STATE.

(632 SE2d 152)

HINES, Justice.

Leon Tawon Cummings ("Cummings") appeals his convictions for malice murder and possession of a firearm during the commission of a felony in connection with the death of Shannon Hereford. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Cummings's brother, Delvechio Cummings ("Delvechio"), was shot in the leg on March 24, 2000; Delvechio refused to cooperate with police investigating the matter. Two days later, Hereford was driving his car with Clinton Huntley seated in the front passenger seat and Jonqual McKay seated in a rear seat. While Hereford's car was stopped at an intersection, another car pulled up alongside it and a man matching Cummings's description emerged from this car and shot several times at Hereford, killing him; Huntley and McKay escaped.

Huntley was interviewed by police. He said that before the fatal shooting, Hereford related that Cummings and Delvechio had "shot up" Hereford's home; when Huntley asked why, Hereford said that it was done because an associate of his had shot Delvechio and taken refuge in the house. Shortly after this exchange, a car pulled alongside Hereford's car, a man emerged from the back passenger area, and shot Hereford. Huntley volunteered to police that if shown a photograph, he could "tell you exactly if that's him or not." Presented with a photographic lineup containing six photographs, Huntley immediately identified Cummings as the shooter.

Antonio Haggins also gave a statement to police. He said that five hours after Hereford was killed, Cummings telephoned him and said "I just off'd a dude" and "I done f___d up." Haggins also said that he had frequently seen Cummings carrying the sort of pistol that fired the fatal shots.

1. The evidence was sufficient to enable a rational trier of fact to find Cummings guilty beyond a reasonable doubt of the crimes of

---

[1] Hereford was killed on March 26, 2000. On February 14, 2001, a Chatham County grand jury indicted Cummings for malice murder and possession of a firearm during the commission of a felony. Cummings was tried before a jury April 23-26, 2001; no verdict was reached, and the court declared a mistrial. Cummings was again tried before a jury December 1-3, 2003, and found guilty of both charges. On December 9, 2003, Cummings was sentenced to life in prison for malice murder, and a term of five years in prison for possession of a firearm during the commission of a felony, to be served consecutively to the life term, both sentences to be served concurrently to a term he was serving on another indictment. Cummings moved for a new trial on December 9, 2003, and amended his motion on March 18, 2005. The amended motion was denied on May 12, 2005. Cummings filed his notice of appeal on June 10, 2005, the appeal was docketed in this Court on October 6, 2005, and submitted for decision on November 28, 2005.

which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The State called Huntley to testify. He stated that he did not recall details of the shooting, that he did not recall that he had previously identified Cummings as the shooter, and did not recall telling the police certain details concerning the shooting.[2] The State impeached Huntley with the videotaped statement he made to police. Cummings asserts that the trial court erred in allowing the State to impeach its own witness without meeting the requirements of then-OCGA § 24-9-81.[3] Although the State contends that Cummings did not object to the introduction of the videotape, he did raise a variety of objections during the State's questioning of Huntley about the videotape. In any event, the statutory requirements were met.

As this Court has held regarding the applicable version of OCGA § 24-9-81, "the statute's plain language . . . requires as a threshold matter a showing that the witness made a statement inconsistent with the witness's testimony at trial." *Jones v. State*, 270 Ga. 25, 27 (3) (505 SE2d 749) (1998). Cummings asserts that, as Huntley's testimony was simply that he could not recall the events, his testimony was not inconsistent with his earlier statement. But, testimony that a witness does not recall certain details which have previously been included in a prior statement is inconsistent with the prior statement about those details. See *Gordon v. State*, 273 Ga. 373, 375-376 (2) (b) (541 SE2d 376) (2001); *Holiday v. State*, 272 Ga. 779, 781 (2) (534 SE2d 411) (2000).

Cummings also contends that the State failed to show that it was "surprised" by Huntley's testimony. However, such was not a requirement of the earlier version of OCGA § 24-9-81 that applied to Cummings's trial. *Jones*, supra.

3. The State also called Haggins to the stand. Haggins testified that Cummings had nothing to do with Hereford's death. When asked whether he had previously told police that Cummings had telephoned

---

[2] In the previous trial of Cummings, Huntley refused to testify; he did not assert any privilege. He was held in contempt, fined $24,500, and ordered to be incarcerated for 980 days.

[3] At the time of trial, OCGA § 24-9-81 read:

> A party may not impeach a witness voluntarily called by him, except where he can show to the court that he has been entrapped by said witness by a previous contradictory statement. However, in the trial of all civil cases, either plaintiff or defendant shall be permitted to make the opposite party, or anyone for whose immediate benefit the action is prosecuted or defended, or any agent of said party, or agent of any person for whose immediate benefit such action is prosecuted or defended, or officer or agent of a corporation when a corporation is such party or for whose benefit such action is prosecuted or defended a witness, with the privilege of subjecting such witness to a thorough and sifting examination and with the further privilege of impeachment, as if the witness had testified in his own behalf and were being cross-examined.

Haggins and related that he had "off'd a dude," Haggins admitted that he made that statement, but testified that he lied to the police when he did so, having been told that he would receive a light sentence on a different crime if he agreed to testify against Cummings. Although Haggins answered some questions concerning his earlier statement, he gave no response to several questions posed by the State.[4] Over Cummings's objection, the trial court admitted the videotape recording of Haggins's statement to police.

Cummings asserts that this was error, contending that under OCGA § 24-9-83,[5] a prior inconsistent statement is admissible only if the witness denies making the prior statement, but not if he simply disputes the truth of the earlier statement. There is no such "denial" requirement under the statute, and the required foundation was made; the "time, place, person, and circumstances attending the former statement[ was] called to [Haggins's] mind with as much certainty as possible." OCGA § 24-9-83. See *Meschino v. State*, 259 Ga. 611, 613 (2) (385 SE2d 281) (1989).

Cummings urges that the trial court should have instructed the jury that the statement was admitted solely for purposes of impeachment, but not as substantive evidence. No such instruction would have been appropriate for that is not the law; "[a] prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence." (Citations and punctuation omitted.) *Gordon*, supra.

4. Cummings also asserts that the trial court erred in striking Haggins's testimony that he shot at Hereford in 1998 and later attempted to do so whenever he saw Hereford; Cummings argues that this deprived him of the ability to argue to the jury that someone else fatally shot Hereford. But, Cummings mischaracterizes the events. The transcript shows the following questioning of Haggins by Cummings:

Q: Now, Mr. Haggins, back in 1998, did you shoot at Shannon

---

[4] In the previous trial of Cummings, Haggins refused to testify; he did not assert any privilege. He was held in contempt, fined $23,000, and ordered to be incarcerated for 920 days.

[5] OCGA § 24-9-83 reads:

A witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. Before contradictory statements may be proved against him, unless they are written statements made under oath in connection with some judicial proceedings, the time, place, person, and circumstances attending the former statements shall be called to his mind with as much certainty as possible. If the contradictory statements are in writing and in existence, they shall be shown to him or read in his hearing. To lay this foundation, the witness may be recalled at any time. When thus impeached, the witness may be sustained by proof of general good character, the effect of the evidence to be determined by the jury.

Hereford?

A: Yes.

Q: Did you shoot at him once or more than once?

A: Every time I saw him, I shot at him.

Q: Okay. (Pause) I'd say there was some bad blood between you.

A: Yeah. He slapped Delvechio at the dice game one night.

[State]: Object to relevancy.

[Court]: Objection sustained. The statement is stricken from the record.

After some discussion, the court noted that it was striking "the statement" as being unresponsive. Clearly, the court's ruling pertained to Haggins's remark concerning Hereford and Delvechio, not to Haggins's own admission concerning shooting at Hereford. The court's ruling did not deprive Cummings of making any relevant inquiry into, or argument concerning, Haggins's attempts on the life of Hereford.

5. Cummings asserts that certain testimony by police officers Coates and Powell was not admissible. However, he did not object to this testimony at trial and has waived appellate review. *Eberhart v. State*, 257 Ga. 600, 602 (8) (361 SE2d 821) (1987).

6. During the course of the trial, a juror informed the court that she did not wish to continue to serve on the jury because she harbored certain fears. The juror was brought into the courtroom without the company of the other jurors and examined by the court and counsel. She stated that her daughter and niece were acquainted with both the victim and the defendant, and that her niece and the victim "actually had more than like a friendly relationship." Although she had not received any specific threats, she felt pressure to find the defendant not guilty "out of fear," and stated that her feelings would prevent her from being fair and impartial in deliberating on the case. The court dismissed the juror and placed an alternate juror on the jury panel.

Under OCGA § 15-12-172,[6] upon "good cause shown to the court," a trial court may replace a juror with an alternate. The trial court has

---

[6] OCGA § 15-12-172 reads:
    If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated. Further replacements shall be made in similar numerical sequence provided the alternate jurors have not been discharged. An alternate juror taking the place of any incapacitated juror shall thereafter be deemed to be a member of the jury of 12 and shall have full power to take part in the deliberations of the jury and the finding of

broad discretion in such a matter. *Murray v. State*, 276 Ga. 396, 398-399 (4) (578 SE2d 853) (2003). Although Cummings contends that the juror did not articulate facts sufficient to show a fear warranting dismissal, in the totality of the circumstances, the court " 'had a sound basis in [determining that dismissal] served the legally relevant purpose of "preserv(ing) public respect for the integrity of the judicial process." (Cit.)' [Cit.]" Id. There was no abuse of discretion.

7. Finally, Cummings argues that he did not receive effective representation by trial counsel, because counsel: (1) failed to object to the admission of Huntley's out-of-court statement to police, or to request a jury instruction under OCGA § 24-9-81 that the statement was admitted solely for impeachment purposes; (2) failed to object to certain opinion evidence of police officers Coates and Powell; and, (3) failed to object to the State's calling Cummings's alibi witness for the purpose of discrediting her testimony.

In order to prevail on his claim of ineffective assistance of counsel, Cummings must show both that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of this test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong, Cummings must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) The failure to object to the admission of Huntley's statement to police does not serve as a basis for a claim of ineffective assistance of counsel. As noted in Division 2, supra, the videotaped statement was admissible. Nor was counsel ineffective for failing to request that the jury be instructed that the statement was admitted solely for purposes of impeachment; the statement was admissible as substantive evidence. Division 3, supra.

the verdict. Any verdict found by any jury having thereon alternate jurors shall have the same force, effect, and validity as if found by the original jury of 12.

(b) Cummings's amended motion for new trial raised the ground of ineffective assistance of counsel, but made no assertion that counsel's failure to object to the opinion evidence of police officers Coates and Powell was a basis for such a claim. Even if this omission did not constitute a waiver of any claim of error on this ground, see *Moore v. State*, 279 Ga. 45, 47-48 (8) (609 SE2d 340) (2005), Cummings has failed to show that trial counsel's failure to object was not the result of a reasonable trial strategy on counsel's part, or that the result of his trial would have been different had counsel objected.[7] At the hearing on his motion for new trial, the only evidence concerning counsel's reasons for failing to make objections was counsel's general observation that not all possible objections are worth making, that "sometimes" too many objections can produce negative consequences, and "[i]f it's not hurting you, you don't object." Cummings posed no questions to counsel concerning the failure to object to the opinion evidence at issue, and has failed to meet his burden as to either prong of the *Strickland* test.

(c) Prior to his convictions, Cummings was tried on the same charges; a mistrial was declared when the jury could not reach a verdict. Eaddy, Cummings's girlfriend at the time of the shooting, testified at Cummings's first trial that he was with her for a portion of the day of the murder, but she died before he was retried. The parties stipulated that her earlier testimony could be read into evidence, and the State did so during the presentation of its case.[8] Although Cummings cites this stipulation as an instance of counsel's ineffectiveness, counsel testified that he would have presented this testimony if the State had not. As this was the only evidence of his alibi, it is reasonable that counsel would want the testimony placed before the jury, and Cummings has failed to show that cooperating in the introduction of Eaddy's testimony was anything other than a decision made in the reasonable exercise of professional judgment.

*Judgments affirmed. All the Justices concur.*

DECIDED JULY 6, 2006 —
RECONSIDERATION DENIED JULY 27, 2006.

*Laura Marcantonio*, for appellant.

---

[7] The State asserts that the officers were qualified to render the opinions to which they testified.

[8] The State argued to the jury that the cross-examination showed that the alibi was contrived well after the shooting, and was not supported by the store receipts Eaddy produced, which showed only that some person had made a purchase two-and-one-half hours before the shooting.

*Spencer Lawton, Jr., District Attorney, Jerome M. Rothschild, Jr., Assistant District Attorney, Thurbert E. Baker, Attorney General, Edwina M. Watkins, Assistant Attorney General,* for appellee.